# EXHIBIT D



ARBITRATION
AND
MEDIATION CENTER

**ADMINISTRATIVE PANEL DECISION**

Ritzio Purchase Limited / DAREOS Inc. / DAREOS Ltd. v. Private Whois, Global Domain Privacy Services Inc. / Registration Private, Domains By Proxy, LLC / Mardiros Haladjian, GGS Ltd. / Sergey Balash / Sergey Budusov, INFOSTAR MANAGEMENT LTD / Irina Polyakova, GLOBAL DOMAIN PRIVACY SERVICES INC / Grygorii Leontiev, GGS Ltd / Grygorii Leontiev, GLOBAL DOMAIN PRIVACY SERVICES INC / Viktor Dmitriev Case No. D2018-0104

**1. The Parties**

The Complainants are Ritzio Purchase Limited of Nicosia, Cyprus / DAREOS Inc. of Majuro, Marshall Islands / DAREOS Ltd. of Nicosia, Cyprus, represented by Mapa Trade marks SL, Spain.

The Respondents are Private Whois, Global Domain Privacy Services Inc. of Panama, Panama / Registration Private, Domains By Proxy, LLC of Scottsdale, Arizona, United States of America / Mardiros Haladjian, GGS Ltd. of Anguilla, Overseas Territory of the United Kingdom of Great Britain and Northern Ireland ("United Kingdom") / Sergey Balash of Moscow, Russian Federation / Sergey Budusov, INFOSTAR MANAGEMENT LTD of London, United Kingdom / Irina Polyakova, GLOBAL DOMAIN PRIVACY SERVICES INC of Panama, Panama / Grygorii Leontiev, GGS Ltd of Anguilla, Overseas Territory of the United Kingdom / Grygorii Leontiev, GLOBAL DOMAIN PRIVACY SERVICES INC of Panama, Panama / Viktor Dmitriev of Ekaterinburg, Russian Federation, represented by Boston Law Group, PC, United States of America.

**2. The Domain Names and Registrars**

The disputed domain names <bestvlk.com>, <bestvulkan.org>, <bestvulkan1.com>, <bestvulkan10.com>, <bestvulkan2.com>, <bestvulkan3.com>, <bestvulkan4.com>, <bestvulkan5.com>, <bestvulkan6.com>, <bestvulkan7.com>, <bestvulkan8.com>, <bestvulkan9.com>, <casinovlk.com>, <club-vulkan.tv>, <deluxvulkan.com>, <moivulkan.com>, <moyvulcan.com>, <myvelkamdeluxe.com>, <myvulkan.email>, <myvulk.com>, <velcam-delux.co>, <velcamdeluxe.co>, <velcamdeluxe.com>, <velcomdeluxe.co>, <velcomdeluxe.com>, <velkam-delux.co>, <velkamdeluxe.co>, <velkamdeluxe.com>, <velkamdeluxe.xyz>, <velkamdeluxe1.com>, <velkamdeluxe11.com>, <velkamdeluxe15.com>, <velkamdeluxe18.com>, <velkamdeluxe21.com>, <velkamdeluxe4.com>, <velkamdeluxe6.com>, <velkamdeluxe9.com>, <velkam.tv>, <velkom-delux.co>, <velkomdeluxe.co>, <velkomdeluxe.com>, <vipvulkan.com>, <vlkgames.com>, <vlkngames.biz>, <vlkngames.co>, <vlkngames.email>, <vlkngames.info>, <vlkngames.mobi>, <vlkngames.net>, <vlkngames.online>, <vlkngames.org>, <vlkngames.xyz>, <vlknslots.com>, <vlkonline.com>, <vlkplay.com>, <vlkslots.com>, <vulcandelux.cc>, <vulcandelux.com>,

<vulcandeluxe.com>, <vulcandeluxe.email>, <vulcandeluxe.mobi>, <vulcandeluxe.online>, <vulcandelux.mobi>, <vulcan-delux.net>, <vulcan-delux.org>, <vulcandelux.xyz>, <vulcan-million.com>, <vulkancasino.com>, <vulkandelux.cc>, <vulkandeluxe2.com>, <vulkandelux.mobi>, <vulkan-delux.net>, <vulkandelux.online>, <vulkandelux.xyz>, <vulkan-palace.com>, <vulkanprize.com>, <welcomespin.com>, and <win-vulkan.com> are registered with URL Solutions, Inc. ("URL Solutions").

The disputed domain names <game-vulcan.com>, <game-vulkan.com>, <lucky-vulcan.com>, <lucky-vulkan.com>, <moi-vulcan.com>, <moi-vulkan.com>, <play-vulcan.com>, <play-vulkan.com>, <velkam.email>, <vlk.me>, <vulcandelux.club>, <vulcandeluxe.club>, <vulcanno.com>, <vulkanclub.biz>, <vulkanclub.info>, <vulkanclub.net>, <vulkanclub.org>, <vulkandelux.club>, <vulkandeluxe.club>, <vulkandeluxe.email>, <vulkan-million.com>, and <vulkanplay.net> are registered with GoDaddy.com, LLC ("GoDaddy").

In this decision, all of the domain names listed above will be referred to as the "Disputed Domain Names".

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on January 19, 2018. On January 19, 2018, the Center transmitted by email to the Registrars a request for registrar verification in connection with the Disputed Domain Names. On January 22, 2018, GoDaddy transmitted by email to the Center its verification response disclosing registrant and contact information for the Disputed Domain Names which differed from the named Respondent in the Complaint. On January 23, 2018, URL Solutions transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain names which differed from the named Respondent in the Complaint. The Center sent an email communication to the Complainants on January 29, 2018 providing the registrant and contact information disclosed by the Registrar, and inviting the Complainants to submit an amendment to the Complaint. The Complainants filed a first amended Complaint on February 1, 2018. The Complainants filed a second amended Complaint on February 9, 2018.

The Center verified that the Complaint together with the first and second amended Complaints satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondents of the Complaint, and the proceedings commenced on February 13, 2018. In accordance with the Rules, paragraph 5, the due date for Response was March 5, 2018. Upon request of the Respondents, the due date for Response was automatically extended to March 9, 2018, in accordance with the Rules, paragraph 5(b). The Response was filed with the Center March 9, 2018.

The Center appointed John Swinson, David E. Sorkin and Nick J. Gardner as panelists in this matter on April 18, 2018. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The Complainants are a group of associated entities which have offered gaming and gambling services online and in various European cities since as early as 1992. According to the Complaint, Ritzio Purchase Limited (the "First Complainant") is a leading gaming operator. Between 2006 and 2010, the First Complainant's operating revenue was in excess of USD 5.5 billion.

According to Bloomberg, Ritzio International Limited operates as a gambling company.  The company operates slot machine halls and casinos in Ukraine, Kazakhstan, Latvia, Lithuania, Estonia, the Czech Republic, Romania, Bolivia, Peru and Mexico.  The company is based in Nicosia, Cyprus.  Ritzio International Limited operates as a subsidiary of Ritzio Entertainment Group.

The Complainants own numerous registered trade marks, including:

(a)     German trade mark number 302008017149 for VULKAN (stylised in a device mark), registered on February 24, 2009, in the name of the First Complainant;

(b)     Russian trade mark number 353692 for VULKAN, registered on November 18, 2005, in the name of DAREOS Inc (the "Second Complainant");

(c)     International trade mark number 791038 for ВУЛКАН (stylised in a device mark), registered on September 3, 2002, designating Armenia, Azerbaijan, Belarus, Estonia, Georgia, Kyrgyzstan, Kazakhstan, Lithuania, Latvia, Moldova, Tajikistan, Turkmenistan, Ukraine and Uzbekistan in the name of DAREOS Ltd (the "Third Complainant");

(d)     International trade mark number 989103 for VOLCANO, registered on August 11, 2008, designating Belarus, European Community, Croatia, Kazakhstan, Serbia and Ukraine in the name of the Third Complainant;  and

(e)     International trade mark number 949162 for a stylised version of the letter "V", registered on January 26, 2007, designating Estonia, Latvia, Belarus, Kazakstan, Lithuania and Ukraine in the name of the Third Complainant.

The Complainants' trade marks extend to goods and services in the field in which the Complainants operate, particularly gaming, lotteries, and betting.  According to the Complaint, the First Complainant has transferred most of its trade marks to the Second and Third Complainants, however the First Complainant continues to control and be licensed to use the trade marks.

The Ritzio website located at "www.ritzio.com" uses the VULKAN and VOLCANO trade marks.  For example, on a web page concerning Germany, it is stated:

"Vulkan Stern is a German version of Ritzio's key brand 'Volcano'.  Ritzio International operates a family of Vulcano-themed facilities that provide visitors with flexible access to a growing portfolio of gaming venues, entertainment services and strict standards of quality and safety.  Thousands of visitors access 249 gaming properties located in four European countries."

The Disputed Domain Names were registered on various dates between 2011 and 2017.

According to the Complaint (and this has not been disputed), all the Disputed Domain Names point to websites (the "Respondents' Websites") which are substantially identical in content and all of which make extensive use of the Complainants' trade marks.  The Respondents' Websites are clearly designed to give the impression to visitors that they are an on line manifestation of the Complainants' successful land based business.  In respect of some of the Disputed Domain Names incorporating the term "velkam", the Disputed Domain Names re-direct to other websites at Disputed Domain Names incorporating the term "vulkan".  The Respondents' Websites provide the same services as those provided by the Complainants.  For each of the Respondents' Websites, the same contact details are listed on the "About" webpage of each of the Respondents' Websites and the same postal address is set out in the footer.

**5. Parties' Contentions**

**A. Complainants**

The Complainants make the following submissions.

Multiple Respondents

Although the WhoIs records show that the Disputed Domain Names are registered to various individual Respondents, the Complainants submit that the Disputed Domain Names are commonly controlled by a single entity, Bonostar Limited, as this entity is listed on the "About" webpage for each of the Disputed Domain Names.  The common control of the Disputed Domain Names is further evidenced by the fact that all the Respondents' Websites are identical in design, graphics, layout, text and content.

Privacy Services have been used in relation to each of the Disputed Domain Names.

Identical or Confusingly Similar

The Disputed Domain Names are identical or confusingly similar to trade marks in which the Complainants have rights.

The Disputed Domain Names incorporate the Complainants' trade marks, or the English translation thereof, and many of which add generic terms such as "club", "online" and "casino".  These terms create further confusion as they indicate an association with the same services that the Complainants provide.

Some of the Disputed Domain Names also include Arabic numerals which are irrelevant for the purposes of assessing confusing similarity.

While some of the Disputed Domain Names incorporate one or more of the Complainants' trade marks in their entirety, others incorporate acronyms or a skewed version of the VULKAN trade mark.  The terms "velcam", "velkam" and "velkom" which are used in the Disputed Domain Names are confusingly similar to VULKAN both typographically and aurally.

Rights or Legitimate Interests

The Respondents are not a licensee of the Complainants nor are authorised to use any of the Complainants' trade marks.

The Complainants have held rights in and have been using their trade marks for more than 20 years prior to the Respondents' registration of the Disputed Domain Names.

The Disputed Domain Names bear no relationship to any legitimate business of the Respondents, nor have the Respondents shown any demonstrable preparations to use the Disputed Domain Names in connection with any *bona fide* offering of goods or services.  The Respondents' use of the Disputed Domain Names trades on the Complainants' fame.

The Respondents have never been commonly known by the Disputed Domain Names.  Instead, the Respondents have purposely hidden themselves from the public by using privacy services to register all the Disputed Domain Names.

The Respondents' use of the Disputed Domain Names is commercial and not fair or noncommercial use.

Registered and Used in Bad Faith

The Respondents have acted in bad faith by registering and using the Disputed Domain Names, which incorporate the Complainants' trade marks, to intentionally attract, for commercial gain, Internet users to the Respondents' Websites by creating a likelihood of confusion.

Evidence demonstrating the likelihood of confusion includes the Respondents' attempts to hide their identity using privacy services and the fact that the Respondents' Websites feature the Complainants' trade marks and are clearly designed to give the impression that they are websites operated by the Complainants.  It is clear that the Respondents were well aware of the Complainants' trade marks at the time of registering the Disputed Domain Names.

The Respondents are attempting to trade off the Complainants' reputation and goodwill in their trade marks in order to divert consumers to the Respondents' Websites which are in direct or indirect competition with the Complainants' business.

Further, the Respondents have included information in the "About" webpage for all Disputed Domain Names which refers to the First Complainant's history and reputation.

**B. Respondents**

The Respondents make the following submissions.

Identical or Confusingly Similar

The Disputed Domain Names are not confusingly similar to any trade marks in which the Complainants have rights.

The Respondents contend that online gambling has been illegal in the Russian Federation since 2006 and therefore the Complainants' trade marks relating to such services, which are relied upon in these proceedings, are not valid.  As a result of the illegality of gambling throughout the Russian Federation, the Complainants have not been using their trade marks in the Russian Federation since at least 2009 and are therefore also vulnerable to cancellation on grounds of non-use.  The Complainants' international trade mark registrations are also invalid as they rely upon the Russian trade marks as the underlying registrations.

While the Panel should find against the Complainants on the basis of the invalidity of their trade marks, the Respondents submit that to the extent that the Complainants 42 of the Disputed Domain Names are not identical or confusingly similar to the Complainants' trade marks.

Many of the Disputed Domain Names incorporate the English term "welcome" either directly (for example, <welcomespin.com>) or by way of Cyrillic twists of the term by replacing the letter "w" with a "v" to be more appealing to Russian speakers (such as in <velcomdelux.co> and <velkam.tv>).  The Disputed Domain Names which feature the letters "vlk" are also short for the Cyrilllic-sounding version of the term "welcome". The Complainants have no trade mark or other rights over the term "welcome".

Further, to the extent that the Complainants have any trade mark rights, such rights are weak given that many parties use similar sounding and looking marks and images for the purposes of gambling.  Therefore, use of additional terms such as "deluxe", "club", and "lucky" are sufficient to distinguish the Disputed Domain Names from the trade marks.

Rights or Legitimate Interests

The Respondents' use of the Disputed Domain Names or trade marks corresponding to the Disputed Domain Names are in connection with a *bona fide* offering of goods or services.  Therefore, the Respondents have rights and legitimate interests in the Disputed Domain Names.

At the time that the Respondents began registering the Disputed Domain Names, the Complainants had not been using their trade marks for years, constituting abandonment of the trade marks and making the registrations vulnerable to cancellation.  Further, the Complainants' gambling operations in the Russian Federation had been made illegal and therefore the Complainants could not have any legitimate trade mark rights arising out of the now-illegal business.

Further, the Respondents claim that the Complainants had explicitly or impliedly consented to the Respondents using their trade marks which confirms that the Complainants do not have trade mark rights in the Russian Federation or Ukraine.  For instance, the Respondent GGS Ltd has been operating its Disputed Domain Names openly and with the implicit consent of the First Complainant for nearly four years.  In this respect, the First Complainant has had extensive discussions with GGS Ltd regarding its Disputed Domain Names and websites, including discussions about possible joint projects.  The Complainants' inaction to use their trade marks over the past eight years demonstrates that the Complainants know that their alleged trade mark rights are not enforceable and also constitutes acquiescence and implied consent to such use.

Registered and Used in Bad Faith

As set out above, the Disputed Domain Names were not registered in bad faith because the Respondents have a legitimate and non-infringing reason for registering them.  The Respondents acted with a genuine and good faith belief that the Complainants' trade marks are invalid for the reasons set out above or at least inapplicable in the jurisdictions where the Respondents conduct their business.  The Respondents also believe that the trade marks at issue are invalid due to the generic nature of the Disputed Domain Names.  Accordingly, the Respondents do not believe they were infringing any trade mark rights at the time of registering the Disputed Domain Names.

The Respondents' Websites are not "copycat" websites of the Complainants' as the Complainants do not operate online gaming services either in the Russian Federation or anywhere else in the world.

The Respondents have not registered the Disputed Domain Names in order to sell them to the Complainants, to disrupt the business of any competitor, nor to prevent the Complainants from reflecting their trade marks in the Disputed Domain Names.

Reverse Domain Name Hijacking

The Respondents have requested that the Panel make a finding of Reverse Domain Name Hijacking.


**6. Discussion and Findings**

To succeed, the Complainants must demonstrate that all of the elements enumerated in paragraph 4(a) of the Policy have been satisfied, namely:

(i)     the Disputed Domain Names are identical or confusingly similar to a trade mark or service mark in which the Complainants have rights;  and

(ii)    the Respondents have no rights or legitimate interests in respect of the Disputed Domain Names;  and

(iii)   the Disputed Domain Names have been registered and are being used in bad faith.

The onus of proving these elements is on the Complainants.

**A. Procedural Issues – Consolidation**

The Complaint is made on behalf of three Complainants in relation to 100 domain names.  Under paragraph 10(e) of the Rules, the Panel finds that it is equitable and procedurally efficient to consider the

issues in the single Complaint given the Complainants are clearly related entities and share a common grievance against the Respondents (see section 4.11.1 of the WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Third Edition ("WIPO Overview 3.0")).  In this case the "common grievance" arises given the Complainants own various trade marks which are relevant to the proceeding and in the case of the First Complainant, is a licensee of the trade marks which are held by the Second and Third Complainants.

The Complaint has been filed against multiple Respondents.  The panel in *Speedo Holdings B.V. v. Programmer, Miss Kathy Beckerson, John Smitt, Matthew Simmons*, WIPO Case No. D2010-0281 comprehensively addresses this issue.  To summarise, consolidation of respondents is appropriate where there is common control of various domain names.  In this case it appears that a single entity controls all of the Disputed Domain Names.  Commonality is evidenced by the identical nature of the Respondents' Websites, the operational details on the "About" page for each website is the same, and the same postal address is set out in the footer of each website.  The WhoIs records for each of the Disputed Domain Names also show the same phone number and email address is being used in respect of the registrant's contact details.

The Panel considers that consolidation of the Respondents would be fair and equitable to all parties.

**B. Procedural Issues – Jurisdiction issues in previous UDRP proceedings**

The Respondents have raised an allegation concerning jurisdiction issues.  They say that the Complainants' behaviour in relation to two previous UDRP proceedings is such that the Complainants should be barred from any findings in their favour in the present case.

The background to this allegation is that the Rules require that any UDRP complaint must "(xii) State that Complainant will submit, with respect to any challenges to a decision in the administrative proceeding canceling or transferring the domain name, to the jurisdiction of the courts in at least one specified Mutual Jurisdiction";  Mutual Jurisdiction is defined as "Mutual Jurisdiction means a court jurisdiction at the location of either (a) the principal office of the Registrar (provided the domain-name holder has submitted in its Registration Agreement to that jurisdiction for court adjudication of disputes concerning or arising from the use of the domain name) or (b) the domain-name holder's address as shown for the registration of the domain name in Registrar's Whois database at the time the complaint is submitted to the Provider".

The Respondents allege that in two identified prior UDRP proceedings, the First Complainant had previously agreed to submit to the jurisdiction of the courts at the location of the respective registrants' address. However, at a later time, it is alleged that the First Complainant then disputed the respective jurisdiction when the respondent to each of those proceedings filed a lawsuit concerning similar issues to the issues considered in the prior UDRP proceedings.  The substance of the Respondents' allegation is that this alleged behaviour should disentitle the complaints to any finding in their favour in the present case, because it would be unfair to allow them to obtain transfer of domain names by means of a UDRP proceeding if they are then subsequently likely to renege on an agreement they have given to submit to court proceedings in a particular jurisdiction concerning the domain names.

In the present case the Complainants have given, as required by the Rules, an agreement to submit to jurisdiction.  It is in the following terms – "the Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer or cancel the domain name(s) that is/are the subject of this Complaint, to the jurisdiction of the courts the location of the principal office of the concerned registrar."

The Panel does not know what form the submission to jurisdiction was given in the previous UDRP proceedings in question.  Accordingly the Panel does not have sufficient evidence to determine whether the First Complainant's conduct amounts to an abuse of process, as alleged by the Respondents.  If the Respondents wish to raise an allegation of this nature it is incumbent upon them to provide in evidence full

details of the relevant allegations and all of the necessary material to explain the allegation. They have not done so.

In view of the fact the Respondents have not made out the allegations in question the Panel does not need to consider whether such allegations, if proved, would operate as a bar to the Complainants in the present case - although the Panel has considerable doubts in this respect and notes there is no explicit applicable provision in the Policy in this regard. However this is a matter which would be better reserved for consideration by a Panel as and when a clear case as to the relevant alleged abuse is made out, which is not the position here.

Accordingly the Panel considers that the most appropriate course is to consider this dispute on the merits of the case before the Panel.

**C. Identical or Confusingly Similar**

Paragraph 4(a)(i) of the Policy provides that the Complainants must establish that the Disputed Domain Names are identical or confusingly similar to a trade mark in which the Complainants have rights.

The Respondents assert that some of the Complainants' trade mark registrations are invalid, and could be removed from the register, due to non-use. However, at the present time, the registrations are current and subsisting. A potential ground for removal is not sufficient to demonstrate that the Complainants do not have sufficient trade mark rights for the purposes of the Policy. Moreover, even if the trade mark registrations were invalid in the Russian Federation, the Complainants hold trade mark registrations for the same or similar marks in other jurisdictions.

For the purposes of this element, the Complainants have established registered rights in the applicable trade marks sufficient for the purposes of the Policy.

The Panel finds that all but one of the Disputed Domain Names are confusingly similar to the Complainants' applicable trade marks for the following reasons:

- The common, obvious or intentional misspelling of the Complainants' trade marks in a number of the Disputed Domain Names is considered by panels to be confusingly similar to the applicable trade mark for the purposes of this element. This stems from the fact that the Disputed Domain Name contains sufficiently recognizable aspects of the applicable trade mark (see section 1.9 of the WIPO Overview 3.0). Examples of such typos include the addition of other terms, as discussed below, or numbers.

- The addition of generic or descriptive or laudatory terms such as "deluxe", "club", "lucky" and "games" to many of the Disputed Domain Names is not sufficient to distinguish between the respective Disputed Domain Name and the applicable trade mark. In fact, in many instances, it adds to the potential confusion as such terms are commonly associated with the services provided by the Complainant.

- The addition of Top-Level Domains ("TLDs") such as ".co", ".com", and ".org" can be disregarded when considering identity between the Disputed Domain Names and the applicable trade mark because the TLD is a "functional necessity rather than an arbitrary trade mark choice" (see *Herbalife International, Inc. v. Herbalife.net*, WIPO Case No. D2002-0234).

- The Disputed Domain Names which incorporate the term "vulcan" or "vulkan" are confusingly similar to the VULKAN trade marks (both word and device marks) and to the transliteration of the Cyrillic version of those trade marks. With respect to the term "vulcan", it is phonetically identical to VULKAN, the substitution of the letter "k" with "c" constitutes a minor variation and is clearly a case of typosquatting.

- The Disputed Domain Names which incorporate the term "velcam" or "velkam" are confusingly similar

to the VULKAN trade marks on the basis that the terms are aurally similar and only differ in respect of two letters, which the Panel reasonably considers to be a minor variation and a case of typosquatting.

-     The Disputed Domain Names which incorporate the terms "vlk", "vlkn" or "vulk" are abbreviations of the VULKAN trade marks and therefore confusingly similar.

-     The Disputed Domain Name <vulcanno.com> is confusingly similar to the VOLCANO trade mark.  The addition of the letter "n" constitutes a minor variation.

-     Taking a similar view to the Panel in *Ritzio Purchase Limited v. Domain Admin, Privacy Protection Service INC d/b/a PrivacyProtect.org / Denis Belov, Asocial Games Ltd./ Ivenkov Vitaly*, WIPO Case No. D2017-1294, the Panel considers that the Disputed Domain Names which incorporate the terms "velcom" or "velkom" are confusingly similar to the V trade mark as they provide a variation of the English word "welcome" substituting the "v" for "w" and in effect conveying the message "welcome to V".

The Panel considers that the Disputed Domain Name <welcomespin.com> is not identical or confusingly similar to any of the trade marks which the Complainants rely upon in their Complaint.

The Complainants are successful on the first element of the Policy in respect of each of the Disputed Domain Names except for <welcomespin.com>.

## D. Rights or Legitimate Interests

Paragraph 4(a)(ii) of the Policy provides that the Complainants must establish that the Respondents have no rights or legitimate interests in respect of the Disputed Domain Names.  The Complainants are required to make out a *prima facie* case showing that the Respondents lack rights or legitimate interests.

The Panel finds that the Complainants have made out a *prima facie* case.  This finding is based on the following:

-     The Respondents are not a licensee or otherwise authorised by the Complainants to use the Disputed Domain Names.

-     There is no evidence that the Respondents have been commonly known by the Disputed Domain Names or the Complainants' trade marks, or have registered or common law trade mark rights in relation to those trade marks.

-     The Respondents have not used, or made demonstrable preparations to use, the Disputed Domain Names in connection with a *bona fide* offering of goods or services.  The Disputed Domain Names point to the Respondents' Websites which imitate the Complainants' business, including use of the Complainants' trade marks and logos.  In the circumstances, this is not a *bona fide* use of the Disputed Domain Names under the Policy.

-     The Respondents have not been making a legitimate noncommercial or fair use of the Disputed Domain Names without intent for commercial gain.  The Respondents are clearly using the Disputed Domain Names to provide online gaming services for commercial purposes.

The Respondents assert that the Complainants had not used their trade marks in certain jurisdictions for a number of years.  The Respondents argument appears to be that their use of the trade marks in these jurisdictions is *bona fide*, and due to the period of time of such use, that the Complainants had consented (by implication or failure to act) to such use.  The Panel does not agree with the Respondents' argument. Knowing use of another's registered trade mark for a period of time to trade off the reputation of that trade mark does not give one rights or legitimate interests for the purposes of the Policy.

In light of the above, the Complainants succeed on the second element of the Policy.

**E. Registered and Used in Bad Faith**

Paragraph 4(a)(iii) of the Policy provides that the Complainants must establish that the Respondents registered and subsequently used the Disputed Domain Names in bad faith.

The Respondents were clearly aware of the Complainants' trade marks at the time of registering the Disputed Domain Names and the Respondents have not disputed this fact.  The Respondents' Websites offer online casino services in a manner which clearly gives the wholly untrue impression that the services are being provided by the Complainants.

By registering and using the Disputed Domain Names, the Respondents are trading off the Complainants' reputation in the trade marks and have designed the Respondents' Websites in such a way that is intended to lead Internet users to believing that they have been set up by the Complainants or that the Respondents are associated with the Complainants.

The Respondents refer to the Complainants' history in the "About" page of each of the Respondents' Websites which indicates bad faith and a lack of rights or legitimate interest in the Disputed Domain Names. Whether the Respondents consider the Complainants' trade marks to be invalid or not, this is clear evidence that the Respondents are trading off the Complainants' reputation in reliance on the Complainants' long standing history.

The Panel does not accept the Respondents' contentions that the Complainants have consented to the registration and use of the Disputed Domain Names.  There is no real evidence before the Panel to this effect.  The Respondents refer to joint venture discussions, however the mere fact that such discussions may have been entered into does not mean that consent, whether implied or express, has been granted to use the applicable trade marks or the Disputed Domain Names.

Further, the Panel considers that the Respondents' pattern of bad faith conduct has been established by virtue of the large quantity of Disputed Domain Names in these proceedings and those that have been the subject of previous UDRP decisions, which were found to constitute abusive domain name registrations (see section 3.1.2 of the WIPO Overview 3.0).  The Respondents have sought to imitate the Complainants' and their business on a significant scale.  This is evidence of bad faith.

In these circumstances, the registration of the Disputed Domain Names using privacy services also supports a finding of bad faith (see *e.g., The Uder Company Pty Ltd and Stay In Bed Milk & Bread Pty Ltd (trading as Aussie Farmers Direct) v. PrivacyProtect.org, Domain Admin, ID # 10760*, WIPO Case No. D2012-0924 and cases cited therein).

In light of the above, the Panel finds that the Complainants have succeeded on the third element of the Policy.

**7. RDNH**

In view of the conclusions reached above, the Panel does not find that the Complainants have attempted reverse domain name hijacking within the terms of the Policy.

**8. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the Disputed Domain Names, <bestvlk.com>, <bestvulkan.org>, <bestvulkan1.com>, <bestvulkan10.com>, <bestvulkan2.com>, <bestvulkan3.com>, <bestvulkan4.com>, <bestvulkan5.com>,

<bestvulkan6.com>, <bestvulkan7.com>, <bestvulkan8.com>, <bestvulkan9.com>, <casinovlk.com>, <club-vulkan.tv>, <deluxvulkan.com>, <game-vulcan.com>, <game-vulcan.com>, <lucky-vulcan.com>, <lucky-vulcan.com>, <moi-vulcan.com>, <moi-vulcan.com>, <moivulcan.com>, <moyvulcan.com>, <myvelkamdeluxe.com>, <myvulkan.email>, <myvulk.com>, <play-vulcan.com>, <play-vulcan.com>, <velcam-delux.co>, <velcamdeluxe.co>, <velcamdeluxe.com>, <velcomdeluxe.co>, <velcomdeluxe.com>, <velkam-delux.co>, <velkamdeluxe.co>, <velkamdeluxe.com>, <velkamdeluxe.xyz>, <velkamdeluxe1.com>, <velkamdeluxe11.com>, <velkamdeluxe15.com>, <velkamdeluxe18.com>, <velkamdeluxe21.com>, <velkamdeluxe4.com>, <velkamdeluxe6.com>, <velkamdeluxe9.com>, <velkam.email>, <velkam.tv>, <velkom-delux.co>, <velkomdeluxe.co>, <velkomdeluxe.com>, <vipvulkan.com>, <vlkgames.com>, <vlk.me>, <vlkngames.biz>, <vlkngames.co>, <vlkngames.email>, <vlkngames.info>, <vlkngames.mobi>, <vlkngames.net>, <vlkngames.online>, <vlkngames.org>, <vlkngames.xyz>, <vlknslots.com>, <vlkonline.com>, <vlkplay.com>, <vlkslots.com>, <vulcandelux.cc>, <vulcandelux.club>, <vulcandelux.com>, <vulcandeluxe.club>, <vulcandeluxe.com>, <vulcandeluxe.email>, <vulcandeluxe.mobi>, <vulcandeluxe.online>, <vulcandelux.mobi>, <vulcan-delux.net>, <vulcan-delux.org>, <vulcandelux.xyz>, <vulcan-million.com>, <vulcanno.com>, <vulkancasino.com>, <vulkanclub.biz>, <vulkanclub.info>, <vulkanclub.net>, <vulkanclub.org>, <vulkandelux.cc>, <vulkandelux.club>, <vulkandeluxe.club>, <vulkandeluxe.email>, <vulkandeluxe2.com>, <vulkandelux.mobi>, <vulkan-delux.net>, <vulkandelux.online>, <vulkandelux.xyz>, <vulkan-million.com>, <vulkan-palace.com>, <vulkanplay.net>, <vulkanprize.com>, and <win-vulkan.com> be transferred to the Complainants.

The Complaint is denied as to the Disputed Domain Name <welcomespin.com>.

**John Swinson**
Presiding Panelist

**David E. Sorkin**
Panelist

**Nick J. Gardner**
Panelist
Date:  May 1, 2018