DOUGLAS A. GRADY (*pro hac vice*)
dgrady@bakerlaw.com
BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, Washington 98104
Telephone: 206-566-7120
Facsimile: 206-624-7317

CLAIR C. PENA
State Bar No. 032756
cpena@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: 216-621-0200
Facsimile: 216-696-0740

Attorneys for Defendants Ritzio Purchase
Ltd., Dareos Inc., and Dareos Ltd.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GGS Ltd. and Infostar Management Ltd., <br><br> Plaintiffs, <br><br> v. <br><br> Ritzio Purchase Ltd., Dareos Inc., and Dareos Ltd., <br><br> Defendants. | No. CV-18-01512-PHX-DWL <br><br> **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> **Oral Argument Requested** |

Defendants Ritzio Purchase Ltd., Dareos Inc., and Dareos Ltd. (collectively, for ease of reference, "Ritzio") operate about 250 highly successful "brick and mortar" gaming clubs across Europe; between 2006 and 2010, Ritzio Purchase Ltd.'s operating revenue was in excess of USD $5.5 billion. For many years and even today, Ritzio has used its VULKAN and ВУЛКАН trademarks to serve as the commercial source and origin of its gaming goods and services (the "VULKAN Trademarks").

Starting in 2012, Plaintiffs GGS Ltd. and InfoStar Management Ltd. (collectively, for ease of reference, "GGS") registered the first of nearly one-hundred domain names that – as GGS freely conceded – incorporate the VULKAN Trademarks. By way of example,

GGS registered "Vulkanclub.org", "Game-vulkan.com", and "Lucky-vulkan.com" with the aim of tricking web users into believing they were visiting a Ritzio internet-based gaming club, when in fact users were visiting web sites operated by GGS.

To right this obvious wrong, Ritzio filed an arbitration action against GGS at the World Intellectual Property Organization ("WIPO Administrative Panel" and "WIPO") pursuant to the Uniform Domain-Name Dispute-Resolution Policy (UDRP). *See Ritzio et. al. vs. GGS et. al.,* WIPO Arbitration and Mediation Center, Case No. D2018-0104 (May 1, 2018) (Ex.[1] 12). At the conclusion of the five-month arbitration, the three-judge Panel issued a scathing decision. The Panel found, among other things: that GGS had wrongly imitated Ritzio's business "on a significant scale"; that GGS was trading off of Ritzio's "reputation in the trademarks" and that it "designed [its] websites in such a way that is intended to lead Internet users to believing that they have been set up by" Ritzio; and that GGS had exhibited a "pattern of bad faith conduct" of "abusive domain name registrations [ ] by virtue of the large quantity of Disputed Domain Names in these proceedings and those that have been the subject of previous UDRP decisions." In sum and summary, the three-judge Panel generally concluded that GGS was a cyber-squatter of the very worst kind, and summarily ordered GGS to transfer ninety-nine illicitly obtained domain names to Ritzio.

Rather than transfer them, GGS filed this civil action (as is its right), apparently hoping and expecting that the exact same evidence – when presented to a jury in Arizona, rather than to three arbitrators at WIPO – might yield them the opposite result. But the unassailable facts and evidence is overwhelming: no reasonable juror could possibly conclude that GGS is anything other than a cybersquatter.

---

[1] Unless otherwise indicated, "Ex." shall refer to exhibits attached to Exhibit 1, the Declaration of Douglas A. Grady in Support of Defendants' Motion for Summary Judgment, submitted with this motion.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

Accordingly, pursuant to FED. R. CIV. P. 56, Ritzio hereby moves for summary judgment on its counter-claim of (1) cybersquatting (15 U.S.C. § 1125(d)); and (2) on GGS's claim of reverse domain name hijacking (15 U.S.C. § 1114(2)(D)(v)).[2]

## I.   FACTUAL BACKGROUND

Ritzio is the owner of the VULKAN Trademarks, including, but not limited to, the following:

a.   German trade mark number 302008017149 for VULKAN (stylized in a device mark), registered on February 24, 2009, (Ex. 2);

b.   Russian trade mark number 353692 for VULKAN, registered on November 18, 2005, (Ex. 3);

c.   International trade mark number 791038 for ВУЛКАН (stylized in a device mark), registered on September 3, 2002, designating Armenia, Azerbaijan, Belarus, Estonia, Georgia, Kyrgyzstan, Kazakhstan, Lithuania, Latvia, Moldova, Tajikistan, Turkmenistan, Ukraine and Uzbekistan, (Ex. 4);

d.   International trade mark number 989103 for VOLCANO, registered on August 11, 2008, designating Belarus, European Community, Croatia, Kazakhstan, Serbia and Ukraine, (Ex. 5); and

e.   International trade mark number 949162 for a stylized version of the letter "V", registered on January 26, 2007, designating Estonia, Latvia, Belarus, Kazakhstan, Lithuania and Ukraine, (Ex. 6).

Ritzio is in the business of providing goods and services in the fields of gaming, lotteries, and betting, and it provides these services under its VULKAN Trademarks, including through the website at the domain "vulkan-casino.de." (Exs. 7–9).

GGS initiated this action after the WIPO Administrative Panel found that ninety-nine of GGS's domain names were confusingly similar to Ritzio's VULKAN Trademarks,

---

[2] This Motion is supported by the following Memorandum of Points and Authorities, the Declaration of Douglas A. Grady (Ex. 1) and its accompanying exhibits, and the pleadings and documents contained in the Court's record, all of which are incorporated herein by reference.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

that the ninety-nine domain names were registered and used in bad faith, and that Ritzio had no legitimate rights or interests in the ninety-nine domain names. (Ex. 12 at 5–7). Although GGS's websites at the Disputed Domains are now offline, the WIPO Administrative Panel pointed to the fact that GGS, in the "About" pages of these websites, appropriated Ritzio's company history as GGS's own history in its finding of bad faith. (Ex. 12 at 7). Accordingly, the WIPO Administrative Panel ordered that those ninety-nine domain names be transferred to Ritzio. (Ex. 12 at 7–8).

In its Complaint in this action, GGS asks the Court to prevent the transfer of twenty-two of those ninety-nine domain names. (Dkt.[3] 1 ¶¶ 5, 18–20).

The twenty-two domain names at issue (the "Disputed Domains") are as follows:

    a. Vulkanclub.org
    b. Vulkanclub.net
    c. Vulkanclub.biz
    d. Vulkanclub.info
    e. Game-vulcan.com
    f. Game-vulcan.com
    g. Lucky-vulcan.com
    h. Lucky-vulkan.com
    i. Play-vulcan.com
    j. Play-vulkan.com
    k. Moi-vulcan.com
    l. Moi-vulkan.com
    m. Vlk.me
    n. Velkam.email
    o. Vulcandeluxe.club
    p. Vulkandeluxe.club
    q. Vulkandelux.club
    r. Vulcandelux.club
    s. Vulkandeluxe.email
    t. Vulkanplay.net
    u. Vulkan-million.com
    v. Vulcanno.com

(Dkt. 1 ¶¶ 18–20, 22).

GGS operates and controls the Disputed Domains and their websites. (Ex. 10 at 12; Dkt. 1 ¶ 22). GGS registered the Disputed Domains with the domain name registrar GoDaddy.com, LLC in 2012 or 2013, years after Ritzio's VULKAN Trademarks were

---

[3] All "Dkt." citations refer to docket filings in this case, No. CV-18-01512-PHX-DWL, unless otherwise stated.

4850-7627-0503.6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

registered, (Exs. 2–6; Ex. 10 at 8; Ex. 11; Dkt. 1 ¶¶ 24, 67), and GGS used privacy services in each of the domain name registrations to shield its identity, (Ex. 10 at 3, n.1; Ex.11). GGS operates in the same industry, gambling and gaming, as Ritzio. (Ex. 7; Dkt. 1 ¶¶ 22–23; Dkt. 28 ¶ 3). At each of the websites of the Disputed Domains, GGS offered online gaming and gambling services where users could play slot-machine-like games and win prizes operate. (Dkt. 1 ¶ 22–23; Dkt. 28 ¶ 3).

In GGS's responsive pleading to the WIPO Administrative Panel, GGS admitted to knowingly using Ritzio's VULKAN Trademarks since at least 2011 in a different domain name not at issue in this case, "vulcan-casino.com," and GGS admitted that it continued to register and operate numerous other domain names and websites incorporating Ritzio's VULKAN Trademarks. (Ex. 10 at 11–12). Furthermore, in the same responsive pleading to the WIPO Administrative Panel, GGS admitted that at least twenty of the Disputed Domains (a)–(l) and (o)–(r) are identical or confusingly similar to Ritzio's VULKAN Trademarks. (Ex. 10 at 16–17). The remaining Disputed Domains, "VLK.me" and "Velkam.email," are visually and aurally similar to Ritzio's VULKAN Trademarks.

GGS does not have trademark or other intellectual property rights in any of the Disputed Domains, and GGS has never been known by "Vulkan" or any similar name or trademark.

## II. **ARGUMENT**

Summary judgment shall be granted when the moving party demonstrates there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Ritzio can demonstrate both.

GGS's claim for reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v) and Ritzio's counterclaim for cybersquatting under 15 U.S.C. § 1125(d) have substantially the same legal elements in common. *Strong Coll. Students Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC*, No. CV-12-01156-PHX-DJH, 2015 WL 12602438, at *8 (D. Ariz. May 15, 2015) ("Section 1142(D)(v), in turn, requires a court to determine whether a party is in compliance with § 1125(d).") (internal quotation marks omitted).  As

applied to this case, both causes of action inquire as to whether 1) GGS "register[ed], traffic[ked] in, or use[d]" the Disputed Domains, 2) whether the Disputed Domains are "identical or confusingly similar to" Ritzio's VULKAN Trademarks, and 3) whether GGS "has a bad faith intent to profit from" Ritzio's VULKAN Trademarks. *See* 15 U.S.C. §§ 1114(2)(D)(v); 1125(d).

The primary differences between GGS's claim for reverse domain name hijacking and Ritzio's counterclaim for cybersquatting is as to which parties bear the ultimate burden of proof and the potential consequences of meeting (or failing to meet) the ultimate burden. It is <u>GGS</u> that bears the burden on its claim for reverse domain name hijacking, including the burden of demonstrating the Disputed Domains are not identical or confusingly similar to Ritzio's VULKAN Trademarks or that GGS did not have a "bad faith intent to profit from" Ritzio's VULKAN Trademarks.[4] *See AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2012 WL 3638721, at *6 (D. Ariz. Aug. 24, 2012) ("Finally, we turn to plaintiffs' claim for reverse domain name hijacking. To prevail, ***plaintiffs*** must show (1) registration of a domain name; (2) that has been 'suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II);' (3) 'that the owner of the mark that prompted the domain name to be suspended, disabled, or transferred has notice of the action;' and (4) 'that [their] registration or use of the domain name is not unlawful.'") (emphasis added); *Direct Niche, LLC v. Via Varejo S/A*, No. 15-CV-62344, 2017 WL 5952896, at *5 (S.D. Fla. Aug. 10, 2017), *aff'd*, 898 F.3d 1144 (11th Cir. 2018) ("Direct Niche brings this declaratory judgment action under 15 U.S.C. § 1114(2)(D)(v), under which a domain name registrant whose domain name has been ordered to be transferred under the UDRP may file a civil action to establish that the registration or use of the domain name by the registrant is not unlawful. Direct Niche bears the burden to prove that its conduct is 'not unlawful' under the Anticybersquatting

---

[4] In addition, to succeed on their claim for reverse domain name hijacking, GGS must also show that the Disputed Domains were "suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II)" and that Ritzio has notice of this action. *Strong Coll. Students Moving Inc.*, 2015 WL 12602438, at *8. Ritzio stipulates that GGS has met these two elements.

Consumer Protection Act."). If GGS cannot meet its burden, it is not entitled to enjoin the transfer of the Disputed Domains to Ritzio. *See* 15 U.S.C. § 1114(2)(D)(v); *Direct Niche, LLC*, 2017 WL 5952896, at *11, *aff'd*, 898 F.3d 1144 (11th Cir. 2018) (Domain name registrant, who sought injunction to prevent transfer of domains, "failed to prove that its conduct was 'not unlawful' under the ACPA" and "shall take nothing from this action.")

Ritzio bears the burden on its counterclaim for cybersquatting, *see* 15 U.S.C. § 1125(d), and if Ritzio succeeds, it may be entitled to damages, costs, and, in exceptional cases, attorney's fees. *See* 15 U.S.C. § 1117.

Fact and expert discovery have closed in this case, and neither GGS nor Ritzio participated in the discovery process. There are no genuine disputes of material fact. GGS cannot meet its burden on its claim for reverse domain name hijacking, and for that reason, the Court should not enjoin the transfer of the Disputed Domains to Ritzio. Still further, because of the the exceptional nature of this case, the Court should award Ritzio statutory damages under 15 U.S.C. § 1117(c) as well as its costs and attorney's fees.

### 1.  GGS Registered, Trafficked In, And Used The Disputed Domains

GGS admits that it registered the Disputed Domains and/or that the Disputed Domains were registered on its behalf. (Ex. 10 at 8; Dkt. 1 ¶¶ 18–20, 22; Dkt. 28 ¶ 3). Further, GGS admits that it operates and controlled the Disputed Domains and the websites that were located there. (Ex. 10 at 12; Dkt. 1 ¶ 22). Therefore, GGS registered, trafficked in, and used the Disputed Domains. *Cf. DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1219 (9th Cir. 2010) ("The statute says 'registers, traffics in, or uses,' with 'or' between the terms, so use alone is enough to support a verdict, even in the absence of violative registration or trafficking.").

### 2.  The Disputed Domains Are Identical Or Confusingly Similar To Ritzio's VULKAN Trademarks

All of the Disputed Domains are identical or confusingly similar to Ritzio's Vulkan Trademarks. In evaluating whether domain names are identical or confusingly similar to a mark, "[t]he question . . . is not whether the domain names . . . are likely to be confused

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

with a [] *domain name,* but whether they are identical or confusingly similar to a [] *mark*. It is the challenged domain name and the [] mark which are to be compared." *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004) (emphasis in original) (internal citations omitted). Where a domain name differs from trademarks only by the addition of generic terms, the domain name suffix (i.e. ".com" or ".org"), or an intentional misspelling of the trademarked term, the domain name is confusingly similar. *Coca-Cola Co.*, 382 F.3d at 784 ("Many of Purdy's domain names differ from plaintiffs' marks only by the addition of generic terms like "my," "says," or "drink" or by the addition of a top level domain suffix. Even if Internet users were seldom to come upon my-washingtonpost.com, mymcdonalds.com or drinkcoke.org, for example, we see no error in the district court's findings that the relevant second level domains (my-washingtonpost, mymcdonalds, and drinkcoke) are confusingly similar to the Washington Post, Coke, and McDonald's marks."); *Shields v. Zuccarini*, 254 F.3d 476, 484 (3d Cir. 2001) ("A reasonable interpretation of conduct covered by the phrase 'confusingly similar' is the intentional registration of domain names that are misspellings of distinctive or famous names, causing an internet user who makes a slight spelling or typing error to reach an unintended site … We conclude that Zuccarini's conduct here is a classic example of a specific practice the ACPA was designed to prohibit.").

Twenty of the Disputed Domains, Domain Names (a)–(l) and (o)–(v) as listed above, differ from Ritzio's VULKAN Trademarks only by the addition of generic words, such as "lucky," "play," "moi" (a variation of "my"), "game," and/or "deluxe," by the domain name suffix, and/or by the intentional misspelling of "Vulkan." In fact, GGS admitted that its similar domain name, "vulcan-casino.com," uses Ritzio's VULKAN Trademarks. (Ex. 10 at 11–12). GGS also admitted in its responsive pleading to the WIPO Administrative Panel that these twenty domain names were identical to or confusingly similar to Ritzio's VULKAN Trademarks. (Ex. 10 at 16–17). Thus, these twenty Disputed Domains are, as a matter of law, confusingly similar to Ritzio's VULKAN Trademarks. *See Coca-Cola Co.*, 382 F.3d at 784; *Shields v. Zuccarini*, 254 F.3d at 484.

– 8 –

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

As to the remaining Disputed Domains, "VLK.me" is an abbreviation of Ritzio's VULKAN Trademarks and is visually and aurally similar to Ritzio's VULKAN Trademarks. The Disputed Domain "Velkam.email" is also visually and aurally similar to Ritzio's VULKAN Trademarks. Thus, these remaining Disputed Domains are also confusingly similar to Ritzio's VULKAN Trademarks. *See Krim-Ko Corp. v. The Coca-Cola Co.*, 3 90 F.2d 728, (CCPA 1968) ("It is sufficient if the similarity in either form, spelling or sound alone is likely to cause confusion"); *Eveready Battery Co., Inc. v. Green Planet, Inc.*, 91 U.S.P.Q.2d 1511 (T.T.A.B. 2009) ("However, similarity in any one of the elements of sound, appearance or meaning is sufficient to support a determination of likelihood of confusion."). In any event, GGS cannot as a matter of law meet its burden to show that these two domains are not confusingly similar to Ritzio's VULKAN Trademarks.

### 3. GGS Has A Bad Faith Intent to Profit From Ritzio's VULKAN Trademarks

GGS actions demonstrate a bad faith intent to profit from Ritzio's VULKAN Trademarks. "15 U.S.C. § 1125(d)(1)(B)(i) enumerates a list of nine non-exclusive factors to be considered in determining whether the domain registrant acted in 'bad faith.'" *Strong Coll. Students Moving Inc*, 2015 WL 12602438, at *9 (internal quotation marks omitted). Those factors are as follows:

I. The trademark or other intellectual property rights of the person, if any, in the domain name;

II. The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

III. The person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

IV. The person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

V. The person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

VI. The person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

VII.   The person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

VIII.   The person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

IX.   The extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. 1125(d)(1)(B)(i)(I–IX). The applicable factors overwhelmingly indicate GGS's bad faith.

**a.    Factor I: GGS has no intellectual property rights in the Disputed Domains.**

GGS does not have any trademark or other intellectual property rights in the Disputed Domains. Thus, this factor indicates GGS's bad faith. *Strong Coll. Students Moving Inc.*, 2015 WL 12602438, at \*10 ("Plaintiffs have not shown that they have any trademark or other intellectual property rights whatsoever in the disputed domain name. Indeed, defendant FSE is the owner of and registered all three marks. This factor thus weighs in favor of a finding of bad faith.")

**b.    Factor II: GGS have never been known as "Vulkan."**

GGS has never been known by "Vulkan" or any similar name or trademark. Thus, this factor weighs in favor of GGS's bad faith. *Strong Coll. Students Moving Inc.*, 2015 WL 12602438, at \*10 ("Plaintiff Robinson admits that neither he nor Plaintiff SCSM is known by the name 'College Hunks.' Consequently, this factor, too, augurs in favor of a finding of bad faith.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

### c. Factor III: GGS did not offer bona fide goods or services at the Disputed Domains.

GGS did not use the Disputed Domains in connection with the bona fide offering of any goods or services. Instead, GGS knowingly used Ritzio's VULKAN Trademarks in its domain names and operated websites for gaming and gambling websites, the same industry in which Ritzio operates. (Ex. 7; Dkt. 1 ¶ 22–23; Dkt. 28 ¶ 3). Thus, this factor indicates GGS's bad faith. *See Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 437 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 575, 181 L. Ed. 2d 425 (2011) (domain name registrant's website no longer made bona fide offering of goods and services when domain name registrant purposefully transformed its website into one that offered goods in the same industry in which trademark holder operated).

### d. Factor IV: GGS used the Disputed Domains for commercial purposes.

GGS used Ritzio's VULKAN Trademarks in the Disputed Domains to operate gaming and gambling websites at the Disputed Domains, which is a commercial purpose. (Dkt. 1 ¶¶ 22–23; Dkt. 28 ¶ 3). Thus, this factor indicates GGS's bad faith. *Cf. Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004) ("The fourth factor cuts in [domain name registrant's] favor because the site was used for noncommercial purposes.")

### e. Factor V: GGS intended to divert web users to the Disputed Domains.

GGS admitted that it knowingly used Ritzio's VULKAN Trademarks since at least 2011, when it began operating a website at the domain "vulcan-casino.com," and GGS admitted that it knowingly continued to operate numerous other domain names and website incorporating Ritzio's VULKAN Trademarks. (Ex. 10 at 11–12). Likewise, GGS admitted that twenty of the Disputed Domains are identical or confusingly similar to Ritzio's VULKAN Trademarks. (Ex. 10 at 16–17). GGS's knowing incorporation of Ritzio's VULKAN Trademarks is evidence of GGS's intent to divert web users from Ritzio websites, like Ritzio's "vulkan-casino.de," to GGS's websites. (*See* Exs. 8–9). Thus, this factor weighs in favor of GGS's bad faith. *Coca-Cola Co. v. Purdy*, 382 F.3d at 786

(domain name registrant's registration of multiple domain names knowing that they were confusingly similar to trademarks was evidence of an intent to divert); *Advance Magazine Publishers Inc. v. Vogue Int'l*, 123 F. Supp. 2d 790, 800 (D.N.J. 2000) (same).

### f.   Factor VII: GGS disguised its identity in registering the Disputed Domains.

Although GGS did not use false contact information, GGS did use privacy services in the registration of the Disputed Domains to conceal its identity, which demonstrates GGS's intent to mislead anyone searching for the registrant of the Disputed Domains. (Ex. 10 at 3, n.1; Ex. 11). Thus, this factor weighs in favor of GGS's bad faith. *See United Auto Credit Corp. v. <unitedautocredit.com>*, No. 115CV00950TSEIDD, 2016 WL 1740203, at *4 (E.D. Va. Apr. 8, 2016), *report and recommendation adopted sub nom. United Auto Credit Corp. v. unitedautocredit.com*, No. 1:15CV950, 2016 WL 1732734 (E.D. Va. Apr. 26, 2016) ("Thirdly, although Plaintiff's Complaint does not allege that Registrant used false contact information, Registrant used Whois to conceal his identity, which similarly shows an intent to mislead anyone searching for the registrant of Defendant Domain Name. Therefore, the undersigned finds that Plaintiff has established that Registrant had the bad faith intent to profit from the use of Defendant Domain Name."); *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1170 (S.D. Tex. 2016) (domain name registrant's use of privacy services to shield identity was evidence of bad faith).

### g.   Factor VIII: GGS registered numerous "VULKAN"-related domains.

GGS registered multiple domain names that incorporate Ritzio's VULKAN Trademarks. (Dkt. 1 ¶¶ 18–20). There are twenty-two domain names at issue in this action, and that number only represents a fraction of GGS's ninety-nine domain names that the WIPO Administrative Panel found had incorporated Ritzio's VULKAN Trademarks. (Ex. 12 at 7–8). Thus, this factor weighs in favor of GGS's bad faith. *See City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1107 (S.D. Cal. 2012) (domain name registrant's registration of twenty domain names confusingly similar to trademarks indicated bad faith).

4850-7627-0503.6

### h.   The permissive factors overwhelmingly demonstrate GGS's bad faith.

While the above "factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit," *Lucas Nursery & Landscaping, Inc.*, 359 F.3d at 811, because so many of the permissive factors overwhelmingly highlight GGS's bad faith, as a matter of law, Ritzio has demonstrated GGS's bad faith intent to profit from Ritzio's VULKAN Trademarks. *See Strong Coll. Students Moving Inc.*, 2015 WL 12602438, at *11 (domain name registrant's registration of the disputed domain name was unlawful because it was done in bad faith where five of the permissive factors indicated bad faith).

## III.   DAMAGES AND ATTORNEY'S FEES

Pursuant to 15 U.S.C. § 1117(c), Ritzio seeks statutory damages for GGS's violations of 15 U.S.C. § 1125(d). Given the culpable conduct and bad faith of GGS as outlined above, Ritzio requests that the Court deem this case to be exceptional and seeks attorney's fees and costs under 15 U.S.C. § 1117(a). *See Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 511 (9th Cir. 2011) ("Indeed, 'bad faith of one of the parties may be part of those exceptional circumstances warranting a fee award.' Based on Lahoti's bad faith and the other factors cited by the district court, this was indeed an "exceptional" case under 15 U.S.C. § 1117(a).") (internal citations omitted).

## IV.   CONCLUSION

Given the undisputed facts and the law support, GGS cannot meet its burden on its claim for reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v), and for that reason, the Court should not enjoin the transfer of the Disputed Domains to Ritzio. Ritzio, however, has met its burden and should prevail on its counterclaim that GGS's registration and use of the Disputed Domains constitutes cybersquatting under 15 U.S.C. § 1125(d). Accordingly, and given the exceptional nature of this case, Ritzio respectfully requests that the Court grant its motion for summary judgment and award Ritzio statutory damages, costs, and attorney's fees.

4850-7627-0503.6

1

Respectfully submitted this 27th day of September, 2019.

2

*s/ Douglas A. Grady*

3

DOUGLAS A. GRADY (*pro hac vice*)
dgrdy@bakerlaw.com
BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, Washington 98104
Telephone: 206-566-7120
Facsimile: 206-624-7317

4

5

6

7

CLAIR C. PENA
State Bar No. 032756
cpena@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: 216-621-0200
Facsimile: 216-696-0740

8

9

10

11

12

Attorney for Ritzio Ritzio Purchase
Ltd., Dareos Inc., and Dareos Ltd.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

– 14 –

4850-7627-0503.6

**TABLE OF CONTENTS**

| <u>Ex. #</u> | <u>Title</u> | <u>Page(s)</u> |
|---|---|---|
| Ex. 1 | Declaration of Douglas A. Grady | 2 |
| Ex. 2 | Excerpt from German Trademark Registry for TM 302008017149 | 3, 4 |
| Ex. 3 | Excerpt from Russian Trademark Registry for TM 353692 | 3, 4 |
| Ex. 4 | Excerpt from WIPO Trademark Registry for TM 791038 | 3, 4 |
| Ex. 5 | Excerpt from WIPO Trademark Registry for TM 989103 | 3, 4 |
| Ex. 6 | Excerpt from WIPO Trademark Registry for TM 949162 | 3, 4 |
| Ex. 7 | Ritzio Company Overview Webpage | 3, 4, 10 |
| Ex. 8 | Ritzio Germany Gaming Webpage | 3, 11 |
| Ex. 9 | Ritzio Vulkan Webpage | 3, 11 |
| Ex. 10 | Plaintiffs' Certified WIPO Response | 4, 5, 7, 8, 11, 12 |
| Ex. 11 | 2017–2018 WhoIs Lookups of Disputed Domains | 4, 12 |
| Ex. 12 | May 1, 2018 WIPO Decision, Case No. D2018-0104 | 2, 3, 4, 12 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SEATTLE

**CERTIFICATE OF SERVICE**

Pursuant to LRCiv 5.5, I certify that the foregoing was electronically filed with this Court's ECF system, which electronic filing will automatically cause a "Notice of Electronic Filing", generated and transmitted by the ECF system, to be sent to all attorneys of record.

*s/ Jennifer Hickman*

– 16 –