EXHIBIT 10

*Before the:*

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

[a.] *RITZIO PURCHASE LIMITED*
Corporate ID: 144533
Diagorou Street 4, Kermia building
6th floor, Office 601, P.C.1097,
Nicosia, Cyprus

[b.] *DAREOS Inc.*
Corporate ID: 85657
Trust Company Complex, Ajeltake
Road, Ajeltake Island, Majuro,
MH96960, Republic of Marshall
Islands

[b.] *DAREOS LTD.*
Corporate ID: HE 372002
Prevezis, 13, 1st floor, Flat/Office 101,
1065, Nicosia, Cyprus

(**Complainants**)

-v-

[a] Private Whois
Global Domain Privacy Services Inc.
Tower Financial Center, 35th Floor,
50th Street and corner of Elvira
Mendez street, Panama

[b] Registration Private
Domains By Proxy, LLC
DomainsByProxy.com 14455 N.
Hayden Road, Scottsdale, Arizona,
85260, US

(**Respondents**)

**Case No:**  D2018-0104 (CRE)

**Disputed Domain Names:**

[1] velcomdeluxe.co
[2] velcomdeluxe.com
[3] velkomdeluxe.com
[4] velcamdeluxe.com
[5] velcamdeluxe.co
[6] velkamdeluxe.com
[7] velkamdeluxe.xyz
[8] velkamdeluxe.co
[9] velkomdeluxe.co
[10] velkom-delux.co
[11] velcam-delux.co
[12] velkam-delux.co
[13] velkam.email
[14] velkam.tv
[15] vulcandeluxe.com
[16] vulcandelux.com
[17] vulcandeluxe.email
[18] vulcandeluxe.mobi
[19] vulkandelux.mobi
[20] vulkandelux.online
[21] vulkandelux.xyz
[22] vulcandelux.xyz
[23] vulcandelux.mobi
[24] vulkancasino.com
[25] vulkan-palace.com
[26] win-vulkan.com
[27] vlkonline.com
[28] vipvulkan.com
[29] bestvulkan.org
[30] bestvulkan1.com
[31] bestvulkan2.com
[32] bestvulkan3.com
[33] bestvulkan4.com
[34] bestvulkan5.com

**Disputed Domain Names (cont.):**

[40] vulkanclub.org

[41] vulkanclub.net

[42] vulkanclub.biz

[43] vulkanclub.info

[44] vulkan-delux.net

[45] vulcan-delux.org

[46] vulcan-delux.net

[47] vulcandeluxe.club

[48] vulkandeluxe.club

[49] vulkandelux.club

[50] vulcandelux.club

[51] deluxvulkan.com

[52] myvulkan.email

[53] moyvulcan.com

[54] club-vulkan.tv

[55] game-vulcan.com

[56] game-vulcan.com

[57] lucky-vulcan.com

[58] lucky-vulkan.com

[59] play-vulcan.com

[60] play-vulkan.com

[61] moi-vulcan.com

[62] moi-vulkan.com

[63] velkamdeluxe1.com

[64] velkamdeluxe4.com

[65] velkamdeluxe6.com

[66] velkamdeluxe9.com

[67] velkamdeluxe11.com

[68] velkamdeluxe15.com

[69] velkamdeluxe18.com

[70] velkamdeluxe21.com

[71] vlkplay.com

[72] vlkslots.com

[73] myvulk.com

[74] casinovlk.com

[75] vlkgames.com

[76] vlkngames.biz

[77] vlkngames.co

[78] vlkngames.net

[79] vlkngames.org

[80] vlkngames.xyz

[81] vlkngames.mobi

[82] vlkngames.email

[83] vlkngames.info

[84] vlkngames.online

[85] vulcanno.com

[86] vulkandeluxe.email

[87] vulkanplay.net

[88] vulkan-million.com

[89] bestvlk.com

[90] vlk.me

[91] vulkanprize.com

[92] welcomespin.com

[93] vulcandelux.cc

[94] vulkandelux.cc

[95] moivulkan.com

[96] vlknslots.com

[97] vulcan-million.com

[98] vulcandeluxe.online

[99] myvelkamdeluxe.com

[100] vulkandeluxe2.com

## RESPONSE
(Rules, Paragraph 5)

### I.  Introduction

[1.]   On February 13, 2018, Respondents received a Notification of Complaint and Commencement of Administrative Proceeding from the WIPO Arbitration and Mediation Center (the **Center**) by email informing Respondents that an administrative proceeding had been commenced by the Complainant in accordance with the Uniform Domain Name Dispute Resolution Policy (the **Policy**), approved by the Internet Corporation for Assigned Names and Numbers (**ICANN**) on October 24, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (the **Rules**) approved by ICANN on September 28, 2013, and in effect as of July 31, 2015, and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the **Supplemental Rules**).  The Center set March 5, 2018 as the last day for the submission of a Response by Respondents.  Following a request pursuant to Rule 5(b), Respondents were granted an automatic extension through March 9, 2018 to submit a Response.

### II.  Respondents' Contact Details
(Rules, Paragraphs 5(c)(ii) and (iii))

[2.]   The Respondents' contact details as alleged in the Complaint in this matter are as follows:

For domains [1]-[6], [8]-[12], [14]-[29], [31]-[39], [44]-[46], [51]-[53], [63]-[75], [89], [91]-[95], [97]-[99]: [1]
Name: Irina Polyakova
Organization: GLOBAL DOMAIN PRIVACY SERVICES INC
Address: Salduba Bldg, 3rd floor, 53rd East Street, Marbella, Panama, PA.
Phone: +507.836526
Email: torringsystems@gmail.com

For domain [7]:
Name: Viktor Dmitriev
Address: ul. Bolshakova, Ekaterinburg, Sverdlovskaya region, 620100, RU
Phone: +7.9521414426
Email: uvictora.ru@gmail.com

For domains [13], [30], [47]-[50], [86]-[88]:
Name: Sergey Budusov

---

[1] The name and organization listed in the record for these domains is clearly is a privacy service. The domains are registered to Respondents InfoStar Management Ltd. and/or GGS Ltd.

Organization: INFOSTAR MANAGEMENT LTD
Registrant Street: Suite 13054, 43 Bedford Street,
     London, London, WC2E 9HA, GB
Phone: +44.207862191
Email: ifsdomains@gmail.com

For domains [40]-[43], [55]-[62], [90]:
    Name: Mardiros Haladjian
    Organization: GGS Ltd.
    Address: 201 Rogers Office Building, Edwin Wallace Rey Drive, George Hill,
        George Hill, P.C.4103, AI
    Phone: +1.442032867846
    Email: fordomain@globo-tech.com

For domains [54], [100]: [2]
    Name: Grygorii Leontiev
    Organization: GLOBAL DOMAIN PRIVACY SERVICES INC
    Address: Salduba Bldg, 3rd floor, 53rd East Street,
        Marbella, Panama, Panama, PA
    Phone: +507.836526
    Email: fordomain@ggsltdcompany.com

For domains [76]-[84], [96]:
    Name: Grygorii Leontiev
    Organization: GGS Ltd
    Street: 201 Rogers Office Building, Edwin Wallace Rey Drive
    City: George Hill
    State/Province: Anguilla
    Postal Code: N/A
    Country: AI
    Phone: +380.734681673
    Email: fordomain@ggsltdcompany.com

For domain [85]:
    Name: Sergey Balash
    Address: Stavropolsky pr. 13-89, Moscow, Russia, 109380, RU
    Phone: +7.9166128454
    Registrant Email: bal646@gmail.com

[3.]   Respondents' authorized representatives in this administrative proceeding are:

| | |
|---|---|
| Name: | Matthew Shayefar, Esq. |
| Organization: | Boston Law Group, PC |
| Address: | 825 Beacon Street, Suite 20, Newton, MA 02459 US |

---

[2] The name and organization listed in the record for these domains is clearly is a privacy service.
The domains are registered to Respondents InfoStar Management Ltd. and/or GGS Ltd.

Telephone:      +1-617-928-1806
Fax:            +1-617-928-1802
E-Mail:         matt@bostonlawgroup.com

and

Name:           Val Gurvits, Esq.
Organization:   Boston Law Group, PC
Address:        825 Beacon Street, Suite 20, Newton, MA 02459 USA
Telephone: +1-617-928-1804
Fax:            +1-617-928-1802
E-Mail:         vgurvits@bostonlawgroup.com

[4.]   Respondents' preferred method of communications directed to Respondents in this
administrative proceeding is:

Electronic-only material
Method:         e-mail
Address:        matt@bostonlawgroup.com & vgurvits@bostonlawgroup.com
Contact:        Matthew Shayefar, Esq. & Val Gurvits, Esq.

Material including hardcopy (where applicable)
Method:         Post/Courier
Address:        Boston Law Group, PC,
                825 Beacon Street, Suite 20, Newton, MA 02459 USA
Fax:            +1-617-928-1802
Contact:        Matthew Shayefar, Esq.

### III.   **Response to Statements and Allegations Made in Complaint**
(Policy, Paragraphs 4(a), (b), (c); Rules, Paragraph 5(c)(i))

### A.   **Introduction**

After years of acting as if they had no trademark rights and after engaging in fraudulent
acts at least twice to steal the domain names of legitimate competitors, Complainants have
initiated this proceeding against Respondents to take away their domains.  Undoubtedly, if this
Panel grants Complainants' requested relief (which, it should not), Complainants will again seek
to fraudulently strip Respondents of their property and the right to adjudicate the merits of this
dispute.  Complainants have already stepped up their improper actions by widening the scope of
domain names that they are attempting to hi-jack by going after domain names that do not
contain or even sound like their invalid trademarks.  Sprinkled within the list of 100 Disputed
Domains are 42 domains that Complainants hope the Panel does not realize do not contain or

sound like their invalid trademark, including 24 domain names that are based on the word "Welcome."  Complainants surely have no monopoly to "Welcome" people to gambling.

Nonetheless, Complainants bring the present action despite: (1) VULKAN is not a valid trademark as used in connection with gambling in Russia, where gambling is illegal; (2) all the asserted country-level trademark registrations were issued in Russia prior to the prohibition and those registrations are now invalid; (3) Complainants' international trademark registrations rely upon those invalid Russian registrations; (4) this is the incorrect forum to resolve this dispute;[3] (5) Complainants have used the UDRP to perpetrate a fraud upon the Center and registrants; and (6) the Complaint is brought against a broad range of distinctive domain names that should be subject to separate analysis.

In two other proceedings,[4] Complainant Ritzio Purchase Limited ("**Ritzio**")[5] laid bare its fraudulent scheme.  In the Complaints in those matters, pursuant to Rule 3(b)(xii), Ritzio agreed to the jurisdiction of the courts in the location of the registrants, such that if the respondents lost the proceedings they could file suit in those courts to fully adjudicate their rights pursuant to Policy ¶4(k).  However, after the panels found for Ritzio and when the respondents filed suit, Ritzio reneged on its representations and instead filed motions disputing jurisdiction.  As a result of these misrepresentations, those registrants lost their domain despite the protections of Policy ¶4(k), all without proper adjudication.  Complainants should not be permitted to continue this scheme of using expedited UDRP proceedings to steal domain names without the intended backup of the courts.  Complainants' putative trademark rights are questionable, an issue that cannot be resolved in this forum.  A UDRP proceeding should not be (and was never meant to be) the first *and* last stop in such a dispute.  However, Complainants have managed to find a way to make it so.  Therefore, Complainants have engaged in Reverse Domain Name Hijacking by "using the Policy in bad faith to attempt to deprive a registered domain name holder of a domain name."

---

[3]  *See EvoPlay LLC v. Ziganshin*, D2015-0222 (April 16, 2015) (complaint by Complainant's putative licensee denied); *EvoPlay LLP v. Haladjian*, D2015-0252 (May 18, 2015) (same).  The cases are discussed in detail below.

[4]  *Ritzio Purchase Limited v. Escave Ltd*, D2015-0875 (Aug. 12, 2015); *Ritzio Purchase Limited v. Budusov / InfoStar Management Ltd*, D2015-1106 (Oct. 7, 2015).

[5]  Given that this new Complaint is brought on behalf of two new complainants (Dareos Inc. and Dareos Ltd.), it is apparent that Complainants are seeking to transfer their domain name hijacking operation to corporate names that have not yet been sullied by their tactics.

Finally, Respondents acknowledge the complex nature of the arguments herein.  However, the arguments are not intended to confuse or distract the Panel, but to show the genuine complicated nature of this dispute and how it is not appropriate for adjudication here.  And given Complainants' fraudulent acts in the past to deny resolution in a court of law, the only way this dispute will be properly and fairly adjudicated is if the Panel *denies* the requested relief.

**B.**     **Factual Background.**

**1.**     **Use of the marks in connection with gambling is illegal in Russia**

Complainants state that they began providing casino and entertainment products in Russia under the trademark VULKAN in 1992.  Complaint, p.20.  Complainants acknowledge that they first received trademark registrations in Russia ("**Russian Registrations**").  Complaint, pp.19-20.  Complainants also introduce international trademark registrations, all of which rely upon the Russian Registrations as the underlying registrations ("**International Registrations**," and with Russian Registrations, "**Disputed Registrations**").  Nonetheless, Complainants also acknowledge that because the websites at the Disputed Domains are all in Russian and the "overwhelming majority of users are from Russia," the "most relevant" (and really the only relevant) trademarks are the Russian Registrations.  *Id.*, p.19.

But Complainants withhold from the Panel the following: (1) Russia banned all online gambling in late 2006, with the effect that Complainants could not have had any legal online gambling operations in Russia thereafter' and (2) Complainants ceased all brick-and-mortar gambling operations in Russia in early 2009 as a result of another law that made all gambling virtually illegal throughout Russia.  Annex 1, Russian Law N244-FZ, §§5.3&5.4.[6]  As discussed below, because of the illegality of both online and brick-and-mortar gambling operations in Russia, Complainants have been unable to offer services in Russia for at least the past nine years (bricks-and-mortar) or twelve years (online), so to the extent they claim protection for gambling the Russian Registrations are invalid due to abandonment and non-use and are subject to cancellation.

---

[6] Complaints' Annex 20 supports Respondents' assertions.  Page 3 shows that "Local Operations," that is, Russian and Ukrainian operations, dropped off immensely in 2009 and were null in 2010.  It also states that 100% of Complainant's operations in the second half of 2010 came from outside Russia and Ukraine.  *Id.*, p.2.  Complaints' Annex 21, a Summary of Complainant's operations and locations, also shows no venues within Russia or Ukraine.

2.      **Registration of the disputed marks was rejected in Ukraine**

The English translation of the Cyrillic-character trademark shown in Complainants'
Russian Registrations is "volcano."  Volcano-related imagery is popular in the context of
gambling, as such imagery calls to mind the "eruptions" of coins and other winnings that are
bestowed upon lucky gamblers.[7]  Therefore, gambling-related trademarks frequently incorporate
references to volcanoes and volcano-related imagery.  Notably absent from the Complaint is any
acknowledgement that Complainants operate in an environment where many others use volcano-
related trademarks.  As detailed below, the existence of those other parties and their own
trademarks has prevented Complainants from registering such marks in Ukraine.

3.      **The Disputed Domains and their Websites**

In 2012 – more than six years after Russia banned Internet gambling, more than four years
after Complainants were legally prohibited from operating physical casinos in Russia, and more
than four years after Complainants thus ceased using their trademarks – Respondents began
registering the Disputed Domains (*see* Complaint, pp. 16-18).  Respondents did so with the
knowledge that trademark rights no longer could exist in Russia for any gambling related
activities.

Without flooding this Panel with documentation for each of the 100 Disputed Domain
names, most, if not all, of visitors to the Disputed Domains come from Russia or Ukraine –
where Complainants can possess no rights in the putative trademarks.  Complainants
acknowledge the same.  Complaint, p. 19.  Moreover, the websites at the Disputed Domains are
available ONLY in the Russian language, and thus are aimed only at users in Russia and
Ukraine, where, again, Complainants have no operations and where their Putative Trademarks
are invalid.

4.      **Prior Proceedings**

On February 17, 2015, Complainants' putative licensee, EvoPlay LLP ("**EvoPlay**"),
commenced a UDRP proceeding against the registrant of domains like casino-vulcan.com and
clubvulcan.com.  *EvoPlay v. Ziganshin*, D2015-0222 (April 16, 2015).  The domains were
operated by GGS Ltd. (a Respondent here).  *See* Sevostianov Affidavit, filed in *InfoStar* case,
Annex 2, ¶12.  The factual allegations and legal arguments in *Ziganshin* are nearly identical to
here.  On February 26, 2015, EvoPlay commenced another proceeding directly against GGS,

regarding the domains bestvulkan.com and myvulkan.com.  *EvoPlay LLP v. Haladjian*, D2015-0252 (May 18, 2015).  Again, the allegations were identical.

EvoPlay based its complaints on its putative license from Ritzio of the putative trademark VULKAN and related trademarks, and alleged that the respondents were operating gambling websites using those trademarks.  The respondents replied that they had registered their domain names more than five years after Russia had banned Internet gambling, more than three years after Ritzio was legally prohibited from operating physical casinos in Russia, and more than three years after Ritzio ceased using the VULKAN marks in Russia and Ukraine.  The respondents also showed that the users of their websites were almost entirely from Russia and Ukraine, that the websites were operated with the implicit consent of Ritzio, and that Ritzio and GGS had even discussed joint projects.

After an extensive period spent reviewing over 1,000 pages of annexes in those cases, the *Ziganshin* panel **DENIED** the complaint.  In arriving at its decision, the majority of the panel found that "Complainant has not carried its burden of proving that Respondent registered and used the Domain Names in bad faith within the meaning of the Policy."  The majority[8] continued:

> [T]his dispute is not well suited for resolution under the Policy....  The Policy does not contemplate this Panel serving as a tribunal of general jurisdiction over any and all disputes which are somehow related to domain names.  The issues raised by the parties here exceed the relatively narrow confines of the Policy, which is designed chiefly to address clear cases of cybersquatting.

On May 18, 2015, the three-member panel in *Haladjian* also denied that complaint and wrote:

> This Panel finds that the issues raised in this proceeding are outside the scope of proceedings under the Policy and are properly decided by traditional (*e.g.*, appropriate judicial) means….  Complainant itself, citing prior cases decided under the Policy, points out to us that issues of trademark validity are generally outside the purview of UDRP proceedings.  For that very reason (among others), Complainant's case fails.  The facts of this case do not establish a clear-cut case of cybersquatting….  These are complex issues best addressed through the court system rather than under the Policy.

---

[7] E.g., the famous volcano at the Mirage Casino in Las Vegas.

[8] In a concurring opinion, the third panelist simply found that the dispute was not well suited for resolution under the Policy and recommended denying the requested relief without considering the merits of the case.

Because the issues in this proceeding and those cases are virtually identical, Respondents request that the panel in this proceeding follow the decisions in the those cases. *See* WIPO Overview 2.0, §4.1 ("The UDRP does not operate on a strict doctrine of precedent. However, panels consider it desirable that their decisions are consistent with prior panel decisions dealing with similar fact situations."). The issues raised in this proceeding, like those in *Ziganshin* and *Haladjian*, are outside the scope contemplated by the Policy and are instead properly decided by traditional means. Therefore, the Complaint should be dismissed. *See*, *also*, *Clinomics Biosciences v. Simplicity Software*, D2001-0823 (August 28, 2001); *Libro AG v. NA Global Link*, D2000-0186 (May 16, 2000).[9]

### 5.   Complainants' Abuses of Proceedings

After the failures of Complainants' putative licensee in *Ziganshin* and *Haladjian*, Ritzio filed two proceedings, *Ritzio Purchase v. Escave*, D2015-0875 (Aug. 12, 2015) and *Ritzio Purchase v. Budusov*, D2015-1106 (Oct. 7, 2015). Pursuant to Rule ¶3(b)(xiii), Ritzio agreed, in both cases, to submit, with respect to any challenges that would be made by the respondents to a decision by the Panel to transfer or cancel the domain names, to the jurisdiction of the courts at the location of the registrants' addresses in the WhoIs database (the "**Mutual Jurisdiction**"). Annex 3, p.26; Annex 4, p.28. Escave was in the Seychelles and InfoStar (a Respondent again here) in England. In both of these cases, the Panels found in favor of Ritzio. But, shortly thereafter in accordance with Policy ¶4(k), both respondents filed a lawsuit in their jurisdictions to challenge the Panels' decisions. Annexes 5-6.

However, despite representing in the complaints that Ritzio would submit to the jurisdiction of the courts in England and Seychelles pursuant to Rule ¶3(b)(xiii), Ritzio subsequently challenged the jurisdiction of the respective courts to hear the disputes. Annexes 8-

---

[9] Other than the *Escave* and *InfoStar* cases (in which, as detailed below, Ritzio perpetrated fraud using the UDRP), Ritzio references a number of other UDRP cases where it putatively succeeded. In many of these cases, the registrants did not respond to the complaints and therefore they are of no precedential value. *See*, *e.g.*, *Ritzio Purchase Ltd. v. Lykov*, D2015-0633 (May 23, 2016) ("No response has been filed."); *Ritzio Purchase Ltd. v. Twist Services Ltd.*, D2016-0967 (July 11, 2016) ("The Respondent did not reply to the substance of the Complainant's contentions."); *Ritzio Purchase Ltd. v. Whoisguard Protected*, D2015-0295 (April 14, 2015) ("The Respondent did not submit a formal Response in this proceeding."); *Ritzio Purchase Limited v. Domain Admin*, D2017-1294 (Aug. 28, 2017) ("No Response has been filed.").

<u>9</u>.  As a result of these actions, the respondents (including, Respondent InfoStar) were stripped of their rights to fully adjudicate the merits of their cases as promised by Policy ¶4(k).  ***The domains have now been transferred to Complainants as a result of their fraud.***

Complainants' actions constitute not only fraud but an abuse of the UDRP proceeding. Ritzio filed the complaints with its representation that it would agree to the jurisdiction of the Seychelles and England courts, respectively, if respondents chose to challenge the decisions of the Panels.  Ritzio was required to submit to these jurisdictions in order to file its complaints and was not entitled to a decision from the Panels if it did not submit.  However, after Ritzio received the Panels' decisions in its favor, it completely ignored its obligations to submit to the Mutual Jurisdictions, taking action in direct contravention.  ***Ritzio lied to the Panels when it promised to submit to the courts***.

There is no question that if Complainants are successful in their Complaint here that they will continue to use the same fraudulent scheme to deny Respondents their rights under Policy ¶4(k) to have this dispute resolved by a court of competent jurisdiction before their domain names are irretrievably stripped.  The UDRP was never intended to be the last stop for disputes. Given the fraud and abuse of proceedings perpetrated by Complainants, Complainants' requested relief should be denied and the Panel should declare in its decision that the Complaint was brought in bad faith and constitutes an abuse of the administrative proceeding.  Rule ¶15(e) ("If after considering the submissions the Panel finds that the complaint was brought in bad faith, for example in an attempt at Reverse Domain Name Hijacking[10] or was brought primarily to harass the domain-name holder, the Panel shall declare in its decision that the complaint was brought in bad faith and constitutes an abuse of the administrative proceeding.").

### 6.    Complainant's Implied Consent to Respondents and Third Parties

For many years, Complainants either explicitly consented to Respondents using the putative trademarks without any oversight or licensing, or simply did not care that third parties did so.  This confirms that even Complainants did not believe they had any trademark rights in Russia or Ukraine.  For instance, Respondent GGS has been using the VULKAN mark since 2011 at the latest.  GGS began operating a website at the domain vulcan-casino.com in June of 2011 and continued to operate numerous other domain names and websites incorporating the

---

[10] The Rules define Reverse Domain Name Hijacking as "using the Policy in bad faith to attempt to deprive a registered domain-name holder of a domain name."

name.  Annex 2, ¶7.  GGS operated its domain names openly and with the implicit consent of Ritzio for nearly four years.  During those four years, Ritzio had extensive discussions with GGS regarding its domain names and websites, including discussions about possible joint projects. *Id.*, ¶¶8-13.

Complainant also allowed EvoPlay to operate without license for years.  EvoPlay operated websites at no fewer than 18 domain names that include the putative VULKAN mark, including club-vulkan.com and vulkanpremium.com.  *Id.*, ¶15.  EvoPlay had been operating these domains since as early as 2011, without any authorization or license from Complainants.  It is clear that Complainants permitted EvoPlay to operate because Complainants knew their alleged trademark rights are not enforceable.  Indeed, it was only shortly before EvoPlay filed the *Ziganshin* and *Haladjian* proceedings that it sought a license from Complainants.  *Id.*, ¶16.

Similarly, Respondents have operated the websites at the Disputed Domains for years in full view of Complainants.  Having at the very least impliedly consented to Respondents and so many third parties using the marks for so many years, Complainants should not now be permitted to hijack the valuable domain names of others.  Therefore, to the extent that Complainants may possess any rights in the Disputed Registrations, Complainants' inaction over the past eight years constitutes acquiescence and implied consent to Respondents' use of the marks.

**C.**     **The Disputed Domains are Not Confusingly Similar to Any Trademark in which Complainants Have Colorable Rights.**

Complainants assert that they own two sets of trademark rights for the VULKAN mark: a set of registrations issued by Rospatent and a set of international registrations issued under the Madrid Protocol.  These Disputed Registrations all are invalid to the extent they claim protection for use in connection with gambling.

**1.     The Russian Registrations are Invalid**

Complainants allege that they have trademark rights in the mark VULKAN and its English translation, VOLCANO, arising from four registrations issued by Rospatent.  All of the registrations claim coverage in Class 41 concerning the provision of gambling services.  Those registrations all were issued in 2008 or earlier.  In mid-2009, however, Russia instituted a ban on casino and gambling services.  As reported at the time:

> Russia closed down its casinos overnight as gambling was banned nationwide....
> The July 1 ban shut gaming halls, from gaudy casinos crowned by extravagant
> neon structures to dingy dwellings containing a handful of slot machines.... The

> Kremlin plans to restrict gambling to Las Vegas-style gaming zones in four rarely visited regions deemed to need investment... but nothing has been built and critics say the zones will fail.

Annex 9. *See also* Annex 1, §5.4.  Complainants do not operate in the four gaming zones. Complaint Annex 20; Annex 10.  In short, gambling has been illegal in Russia for over seven years, and in the few isolated zones where it remains possible, Complainants have no operations.

Russia's statutes prohibit the registration of trademarks "that are contrary to public interests, or to principles of humanity or morality." Civil Code of the Russian Federation ("Civil Code"), Article 1483 §3(2), Annex 11.  The Civil Code provides that any registration may be invalidated "fully or in part during the whole period of validity of the exclusive right to a trademark," on such grounds.  Civil Code, Art.1512 §2.  Given Russia's virtual bans on gambling, and Complainants' subsequent decision not operate in Russia, Complainants' registrations are invalid and vulnerable to cancellation.

The Russian Registrations also are vulnerable to cancellation on grounds of non-use, owing to Complainants' failures to offer gambling and casino services within Russia itself since the ban.  *See, e.g.*, *In Re Casino De Monaco*, 2010 U.S.Dist. LEXIS 33950 (SDNY 2010) (where mark holder did not operate casinos within the United States, it had no protectable trademark rights and could not compel the transfer of respondent's online casino domains incorporating the putative mark).  Similarly, the Civil Code provides that "Legal protection of a trademark may be early terminated with respect to all goods or part of the goods for the individualization of which the trademark has been registered as the result of the nonuse of the trademark continuously within any three years after its official registration," and "Termination of legal protection of a trademark shall mean the termination of the exclusive right to this trademark."  Art.1486 §§1&4.

Here, Complainants are attempting to rely upon Russian trademark registrations that are, at best, of dubious validity because the claimed services are illegal throughout Russia and have not been utilized there for over twice as long as the statutory non-use period.  Those registrations cannot form a valid basis for granting Complainants' demand.

**2.      The International Registrations are Invalid**

Complainants also attempt to assert the trademark rights embodied in International Registrations issued under the Madrid Protocol.  None of the international registrations grant or

extend any rights into Russia, and they are not "applicable in" Russia; instead, each simply relies upon on an earlier Russian registration:

| International Registration No. | Mark | "Basic" Registration |
|---|---|---|
| 989103 | VOLCANO | Russian Registration No. 307879 |
| 992196 | ВУЛКАН (игровые клубы) | Russian Registration No. 342291 |
| 977713 | ВУЛКАН | Russian Registration No. 342290 |
| 984297 | VULKAN | Russian Registration No. 353692 |

As noted, the Russian Registrations are presumptively invalid due to Complainants' non-use, and inability to use, the marks in connection with gambling, and none of the International Registrations, in themselves, create any trademark rights in Russia or Ukraine.

Furthermore, Complainants are Cyprus and Marshal Islands entities. For a party to file a valid Madrid Protocol application, that party must "have a real and effective industrial or commercial establishment or a domicile in, or [be] a national of, one of the countries party to the Protocol," and "Before a mark can be the subject of an international application, it must already have been registered, or registration must have been applied for, for the same goods or services with the trademark registration office of a country in respect of which one of the requirements mentioned in point 3 is fulfilled." Madrid Protocol, §§3&4, Annex 12. However, Complainants provide no evidence of any trademark rights extant in Cyprus or the Marshall Islands. This means that Complainants must have "a real and effective industrial or commercial establishment" in Russia in order for the International Registrations to be valid. However, Complainants have no establishments in Russia, and the International Registrations in their entireties thus are suspect and invalid.

**3.     Complainants share any rights to VULKAN/VOLCANO with others.**

In attempting to extend the International Registration into multiple jurisdictions, Complainants have encountered repeated refusals from national intellectual property registries

and objections from private parties arising out of the fact that other entities make use of VULKAN/VOLCANO trademarks specifically in connection with gambling activities.  As the chart of only some instances below shows, objections and oppositions repeatedly have been lodged against Complainants' attempts to register the VULKAN/VOLCANO trademarks in connection with Class 41 services, on the grounds that doing so would create a likelihood of confusion:

| Complainant Int'l. Reg. | Mark | Total Refusal of Protection on Confusion Grounds | Partial Refusal on Confusion Grounds (Class 41 specifically) | Third Party Opposition on Confusion Grounds (Class 41 specifically) |
|---|---|---|---|---|
| 989103 | VOLCANO | | European Community, Kazakhstan | European Community |
| 992196 | | Belarus | Ukraine, Kazakhstan | |
| 977713 | | | Ukraine, Kazakhstan | |
| 984297 | VULKAN | Ukraine | European Community, Serbia, Belarus, Kazakhstan | European Community (x3) |

Copies of registry objections and third-party oppositions are attached hereto as <u>Annex 13</u>. To pick a single example, in 2009, the Ukrainian registry refused registration of the VULKAN mark to Complainant *because other parties had long been using similar marks for casinos in Ukraine*.  <u>Annex 14</u>.  In French, in Section IV, "Grounds for Refusal," the registry states that "The sign <VULKAN> cannot be taken as a mark because similar signs have been taken previously in the names of Ukraine with 'VOLCANO.'"  Section VI states that it is a "refusal for the totality of products and services."[11]  Ritzio never disputed that provisional refusal, which then became final.

Complainants exist and operate in an environment where they do not possess exclusive rights to use the word VULKAN/VOLCANO as a trademark, even in connection with gambling

---

[11] If the Panel desires, Respondents will provide a certified translation of the entirety of this refusal and the others enclosed herewith.

services, and their attempt to wrestle the Disputed Domains away from Respondents represents an improper attempt to expand such rights.

     **4.**    **The Disputed Domains are <u>Not</u> Identical or Confusingly Similar**

In what can only be described as an attempt to overwhelm the Panel into ruling for Complainants across the board, Complainants have filed this proceeding seeking the transfer of ***One Hundred*** distinctive domains.  While Respondents assert that the Panel should rule against Complainants entirely for the reasons set forth above, to the extent that the Panel even considers whether the Disputed Domains are identical to or confusingly similar to the Disputed Registrations, the Panel should find that a 42 of the Disputed Domains are not identical to or confusingly similar to the Disputed Registrations.

23 of the Disputed Domains contain Cyrillic twists on the English word "welcome," replacing the "w" with a "v" to be more appealing to Russian speakers.  These domain names include velcomdeluxe.co, velkam.tv, velcam-delux.co, and myvelkamdeluxe.com.  None of these domain names sound like, look like or are confusingly similar to the VULKAN or VULCANO marks.  There is even one domain name that is spelled in the English form: welcomespin.com.  Complainants have no trademark or other rights over the word "welcome" and this Panel should not extend their limited trademark rights, to the extent they even have any, to this greeting.  *If the Panel rules in favor of Complainants, it is not hard to imagine that Complainants would start sending cease and desist letters to Las Vegas casinos because black jack dealers say "welcome" to gamblers that sit down at their tables.*  Every domain name in the world incorporating "welcome" would be subject to Complainants' control, from welcomeskateboards.com to welcomestartup.eu.  No trademark rights can extend so far and the Complaint should be denied as to these 24 domains.

Then there are another 17 domain names that use the letters "vlk" (e.g. bestvlk.com, slkplay.com, vlkonline.com, vlk.me, etc.), which are again not identical to or confusingly similar to the putative marks.  These three letters are short for the Cyrillic-sounding version of "welcome" discussed above.  There is also the myvulk.com domain name which is, again, like all the above domain names, not identical to or confusingly similar to the Disputed Registrations.

Finally, to the extent that Complainants' have ANY trademark rights at all (which Respondents dispute), those rights are weak given the many parties that use similar sounding and looking marks and image for gambling (*supra*).  Therefore, the further distinguishing terms used

in the Disputed Domains (e.g., deluxe, club, lucky, million, etc.) are sufficient to distinguish Respondents' domain names from the Disputed Registrations. *Office of Medical & Scientific Justice v. DeShong*, FA1486064 (May 6, 2013) ("Respondent claims that its <hivinnocencegrouptruth.com> and <hivinnocenceprojecttruth.com> domain names are not identical to Complainant's HIV INNOCENCE GROUP mark because the word 'truth' differentiates the domain names. The Panel finds Respondent's addition of the term 'truth' to the Complainant's mark in each of the disputed domains distinguishes the domains from the mark under Policy ¶ 4(a)(i) . . . ."); *Webvan Group v. Atwood*, D2000-1512 (Feb. 20, 2001) ("[W]hen a mark is a relatively weak non-distinctive term, courts have found that the scope of protection may be limited to the identical term and that the addition of other descriptive matter may avoid confusion.").

**D.      Respondents Have Rights and Legitimate Interests in the Disputed Domains.**

Policy ¶4(c) states that if the respondent has *any* legitimate rights or interest in the disputed domains, then the complainant cannot succeed for the purposes of Policy ¶4(a)(ii). Specifically, Policy ¶4(c)(i) states that if, before any notice of the dispute to Respondents, Respondents' use of the domain name or a trademark corresponding to the domain name was made in connection with a bona fide offering of goods or services, then Respondents have rights and legitimate interests.  Respondents easily satisfy this test.

Respondents have a plausible, non-infringing reason for selecting the Disputed Domains, proving that their use is bona fide.  *WebVan Group*, *supra* ("[A] plausible, non-infringing explanation for selection of the domain name is evidence that the use is bona fide."). Specifically, Complainants had not been operating in Russia or Ukraine under the trademarks for years when Respondents first registered any of the Disputed Domains, constituting abandonment of the trademarks and making the trademark registrations vulnerable to cancellation.  Moreover, Complainants' operations in Russia had by then been made illegal, and therefore Complainants could not have legitimate trademark rights arising out of a now-illegal activity.  Based on the foregoing, Respondents had a good faith belief that they were not infringing any legitimate trademark rights when they registered the Disputed Domains to be used in Russia and Ukraine. For the foregoing reasons, Respondents have rights to and legitimate interests in the Disputed Domains.

**E.**     **The Disputed Domains Were Not Registered or Used in Bad Faith.**

"The Policy, paragraph 4(a)(iii), obliges the Complainant to establish that the Domain Name 'has been registered and is being used in bad faith.'  The consensus view since the Policy was implemented in 1999 has been that the conjunctive 'and' indicates that there must be bad faith both at the time of registration and subsequently."  *Mile v. Burg*, D2010-2011 (Feb. 7, 2011).

The Disputed Domains were not registered in bad faith because Respondents had a legitimate and non-infringing reason for registering the them.  Complainant had not been operating in Russia or Ukraine under the VULKAN trademark for years by the time Respondents registered any of the Disputed Domains.  Moreover, Complainants' casino and online gambling operations in Russia had been made illegal, and therefore could not have formed the basis for any legitimate trademark rights.  Therefore, Respondents had a good faith belief that they were not infringing any trademark rights when they registered the Disputed Domains.  *See WebVan*, *supra* ("However, a plausible, non-infringing explanation for selection of the domain name is evidence that the use is bona fide.").  Because the Policy requires bad faith intent at the time of registration, and because there was no bad faith intent at such time, Policy ¶4(a)(iii) is not satisfied.

Moreover, the websites located at the Disputed Domains are not "copycat" websites that compete with Complainants, because Complainants do not operate online gaming services, either in Russia or Ukraine (where Respondents' websites are used), or elsewhere in the world.

Policy ¶4(b) lists several other factors that might evidence use and registration in bad faith, none of which are present here.  Respondents have not registered the Disputed Domains for the purpose of selling them to Complainants, nor have Respondents registered them to prevent Complainants from reflecting their putative trademarks in domain names.  Also, Respondents did not register the Disputed Domains for the purpose of disrupting the business of any competitor (although it is clear that Complainants are disrupting the business of their competitors).

Finally, "Bad faith has a subjective component."  *Tenza Trading Ltd. v. WhoIs Privacy Corp.*, FA1634997 (Nov. 16, 2015).  In the *Tenza* case, the panel found that the respondent had a genuine and good faith belief that the marks at issue in the dispute were invalid because they were generic, even though the panel also found that the respondent had failed to establish genericness.  The panel held that "While we have concluded that Respondent has failed to

establish genericness, we now further conclude that, nonetheless, Complainant has failed to establish that Respondent did not have a good-faith *belief* in the genericness of the mark in question." *Id.  See*, *also*, *Magnetic Shield Corp. v. MuShield*, FA1158545 (Apr. 29, 2008) (respondent's reasonable belief that registered trademark was generic precludes finding of bad faith).  Much like in this line of cases, Respondents have a genuine and good faith belief that Complainants' marks are invalid or at least inapplicable in the jurisdictions where Respondents do business.  Accordingly, this Panel should find that Complainants have failed to establish the third required element.

For the reasons stated herein, Respondents requests that the Panel **deny** the relief requested by Complainants.  Respondents also request that the Panel issue a finding that the Complaint was brought in bad faith and constitutes an abuse of the administrative proceeding.

## IV.  **[Omitted]**

## V.  **Administrative Panel**
(Rules, Paragraphs 5(c)(iv) and (c)(v) and Paragraph 6;  Supplemental Rules, Paragraph 7)

[7.]   The Respondents elect to have the dispute decided by a **three-member Administrative Panel**.  Respondents provide the names of the following three persons for use in the panel:

1.    David E. Sorkin
      Center for Information Technology and Privacy Law
      The John Marshall law School
      315 South Plymouth Court
      Chicago, Illinois 60604
      United States of America
      Telephone: +1-312-987-2387
      Fax: +1-773-648-7044
      Email: david@sork.com
      http://www.wipo.int/export/sites/www/amc/en/domains/panel/profiles/sorkin-davide.pdf

2.    Paul C. Van Slyke
      Hoove Slovacek LLP
      Galleria Tower II
      5051 Westheimer, Suite 1200
      Houston, TX 77024

United States of America
Telephone: +1-713-977-8686
Fax: +1-713-977-5395
Email: vanslyke@hooverslovacek.com
http://www.wipo.int/export/sites/www/amc/en/domains/panel/profiles/vanslyke-paulc.pdf

3.    Maxim H. Waldbaum
      MAXIM IP
      175 West 13 Street, Suite 20D
      New York, NY 10011
      United States of America
      Telephone: +1-917-603-3905
      Email: mwaldbaum@msn.com
      http://www.wipo.int/export/sites/www/amc/en/domains/panel/profiles/waldbaum-maximh.pdf


## VI.  Other Legal Proceedings
(Rules, Paragraph 5(c)(vi))


[8. ]  None.


## VII.  Communications
(Rules, paras. 2(b), 5(c)(vii);  Supplemental Rules, Paragraphs 3, 7, 12)


[9.]  A copy of this Response has been transmitted to the Complainants on March 9, 2018 in electronic form.


[10.]  This Response is submitted to the Center in electronic form, including any annexes, in the appropriate format.


## VIII.  Payment
(Rules, Paragraph 5(d); Supplemental Rules, Annex D)

[11.]  In view of Complainants' designation of a single-member Panel and Respondents' designation of a three-member Panel, Respondents submitted payment in the amount of USD $6,000 by the Center's secure online payment facility on March 9, 2018 (Transaction Number DOM-200275284).

### IX.  **Certification**
(Rules, Paragraph 5(c)(viii), Supplemental Rules, Paragraph 15)

[12.] Respondents agrees that, except in respect of deliberate wrongdoing, an Administrative Panel, the World Intellectual Property Organization and the Center shall not be liable to a party, a concerned registrar or ICANN for any act or omission in connection with the administrative proceeding.

[13.] Respondents certify that the information contained in this Response is to the best of the Respondents' knowledge complete and accurate, that this Response is not being presented for any improper purpose, such as to harass, and that the assertions in this Response are warranted under the Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully submitted,

_____

Matthew Shayefar, Esq.

Val Gurvits, Esq.

Date: March 9, 2018

# X.  <u>List of Annexes</u>

[(Rules, Paragraph 5(c), Supplemental Rules, Paragraph 12, Annex E)

1.    Federal Law of December 29, 2006 No. 244FZ, "On government regulation of gambling activities and on introduction of amendments to some legislative acts of Russian Federation."

2.    Affidavit of Andrey Sevostianov

3.    Complaint in *Ritzio Purchase Limited v. Escave Ltd*, WIPO Case No. D2015-00875 (Aug. 12, 2015)

4.    Complaint in *Ritzio Purchase Limited v. Budusov / InfoStar Management Ltd*, WIPO Case No. D2015-1106 (Oct. 7, 2015)

5.    Plaint filed with Supreme Court of Seychelles in *Escave Ltd v Ritzio Purchase Limited*

6.    Particulars of Claim filed with The High Court of Justice in *InfoStar Management Ltd v. Ritzio Purchase Limited*

7.    Ritzio Defence in Limine Litis filed in Seychelles case of *Escave Ltd v. Ritzio Purchase Limited*

8.    Ritzio Filings in England case of *InfoStar Management Ltd. v. Ritzio Purchase Limited* disputing jurisdiction

9.    "Russia bans all gambling and shuts casinos," REUTERS (July 1, 2009)

10.    "A raw deal for Russia's casino workers," THE MOSCOW NEWS (January 2, 2010)

11.    Civil Code of the Russian Federation, Selected Articles

12.    Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks

13.    Various Refusals of Protections from Various Governmental Agencies

14.    Ukraine Provisional Refusal of Protection