**Valentin Gurvits** (*pro hac vice*)
vgurvits@bostonlawgroup.com
**Matthew Shayefar** (*pro hac vice*)
matt@bostonlawgroup.com
**Boston Law Group, PC**
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel: 617-928-1800 | Fax: 617-928-1802

*Attorneys for Plaintiffs/Counter-Defendants*

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF ARIZONA

| | |
|---|---|
| **GGS Ltd**, an Anguilla company, and **InfoStar Management Ltd,** an English company, <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> **Ritzio Purchase Limited**, a Cyprus company, **Dareos Inc.**, a Marshall Islands company, and **Dareos Ltd.**, a Cyprus company, <br><br> Defendants/Counter-Claimants. | Case No.: CV-18-01512-PHX-DWL <br><br> **Plaintiffs' Opposition to Defendants' Motion for Summary Judgment** |

Plaintiffs GGS Ltd. and InfoStar Management Ltd. hereby oppose Defendants' Motion for Summary Judgment (the "Motion") seeking judgment in Defendants' favor on the causes of action arising from the Anti-Cybersquatting Consumer Protection Act (the "ACPA"), which would result in the transfer of twenty-two domain names referenced in the Complaint (D.E. 1, ¶¶ 18-20) (the "Disputed Domains") to Defendants.

1

The Motion should be denied for numerous reasons. First, Defendants have woefully failed to comply with Local Rules regarding statements of material facts to be submitted with motions for summary judgment. This has prejudiced Plaintiffs and is in any case a basis for denial. Moreover, there exist disputed material facts as to numerous issues, including as whether Defendants have any enforceable trademark rights at all. Defendants' Motion has also failed to take into consideration Plaintiffs' affirmative defenses, which are supported by undisputed facts. Finally, Defendants have failed to show that they have succeeded on their cause of action based on undisputed facts given that the undisputed facts require a finding for Plaintiffs at trial.

**PRELIMINARY PROCEDURAL ARGUMENT**

**I.     The Motion Should be Denied or Struck for Failure to Comply with Local Rules Requiring a Separate Statement of Facts**

LRCiv 56.1(a) requires that "Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion.... Each material fact in the separate statement must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.). A failure to submit a separate statement of facts in this form may constitute grounds for the denial of the motion." Anyone appearing before this Court is bound by the Local Rules. LRCiv. 83.3(c)(1).

Here, Defendants have completely failed to comply with LRCiv 56.1(a) as there is no separate statement of facts filed with the Motion. Not only is there no separate

2

statement of facts, Defendants have failed to even submit a list of material facts in separately numbered paragraphs. To the extent that Defendants refer to any facts at all in the memorandum, there is no distinction between which of the facts are material and immaterial, and any purported facts are sprinkled throughout the memorandum rather than in one single place for Plaintiffs and the Court to review. Proper procedure is integral to resolving any motion for summary judgment:

> The rule distinguishes between a separate statement of facts and a memorandum of law because the two documents serve different purposes. The court should be able to glean which facts, if any, are genuinely disputed by reviewing the parties' separate and controverting statements of facts. Working from that baseline of facts, the court then looks to the parties' memoranda of law to determine whether any genuinely disputed matters are material under governing law, or whether the movant is entitled to judgment as a matter of law. Thus, factual disputes should be aired in the parties' separate statements, while legal disputes should be addressed in their memoranda of law.

*Petty v Arizona*, No. 2018 WL 2220665, at *2 (D. Ariz. May 15, 2018).

Defendants' failure to comply with this rule prejudices Plaintiffs in opposing Defendants' Motion because Plaintiffs cannot determine what facts Defendants deem to be material and which of them must be controverted. *See* LRCiv 56.1(a) ("The separate statement should include only those facts that the Court needs to decide the motion. Other undisputed facts (such as those providing background about the action or the parties) may be included in the memorandum of law, but should not be included in the separate statement of facts."). Plaintiffs are left to scour Defendants' Motion for what may be deemed material facts and attempt to controvert them in a haphazard manner rather than in the organized fashion set forth in LRCiv 56.1(b).

On the basis of Defendants' failure to comply with LRCiv 56.1(a), Plaintiffs accordingly request that this honorable court strike or deny Defendants' Motion in its entirety. *See* LRCiv 56.1(a) ("A failure to submit a separate statement of facts in this form may constitute grounds for the denial of the motion."); *Miller v. Sedlmeier*, 2016 WL 5341182 at *5 (D. Ariz. Sept. 22, 2016) (denying plaintiff motion for summary judgment for failure to comply with LRCiv 56.1's requirement for separate statement of facts, stating that "the Local Rules apply to all persons appearing before this Court, whether represented by counsel or not").

**II.      The Motion Should Be Denied for Failing to Support Facts**

Exacerbating the issue that Defendants failed to submit a separate statement of facts, many of the facts sprinkled throughout Defendants' Motion are unsupported by any citation to materials in the record. Federal Rule of Civil Procedure 56(c)(1) requires that Defendants support their assertions by "citing to particular parts of materials in the record." LRCiv 56.1(a) requires that "[e]ach material fact ... must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.)."

Defendants' Motion is littered with facts without any attempt at support, and even more without appropriate support. The two first sentences of the Motion appear to be the very foundation for Defendants' trademark rights, with allegations that Defendants have hundreds of brick and mortar clubs and billions in revenue, but there is NO support for these statements whatsoever. Other purported facts on page 3 of the Motion claim that

"Ritzio"[1] provides gaming services through a website at the domain "vulka-casino.de," but Defendants' only putative support for the statement is to reference printouts from the website at the domain name, which not only constitutes hearsay, but which does not indicate that any of the named Defendants actually operate the website (in fact, as will be shown, the website is operate by some third party).

Defendants make other conclusory claims without proper support that must be disregarded. *See*, *e.g.*, *Petty v. Arizona*, 2018 WL 2220665, at *1 (D. Ariz. May 15, 2018) ("Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment." (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989))); *Wanmei Ni v. Univ. of Arizona*, 2018 WL 1382527, at *6 (D. Ariz. Mar. 19, 2018) ("Here, Plaintiff's controverting facts do not contain a single citation to the record.... [B]are factual allegations and conclusory statements have not been given any weight."). Some of those conclusory and unsupported claims include:

(a) That GGS does not have trademark or other intellectual property rights in any of the Dispute Domains, and that GGS has never been known by "Vulkan," made without any citations whatsoever, where in reality GGS has trademark rights and has been known by "Vulkan" given that it has been operating websites under that name since 2011 (detailed below).

---

[1] As detailed below, Defendants use the name "Ritzio" indiscriminately throughout the Motion to refer to all three Defendants, but never explain which of the three Defendants the particular fact actually refers to. Defendants appear to be engaging in sleight of hand, given that in a few circumstances Plaintiffs have been able to determine that the factual assertions actually relate to *none* of the Defendants, but third parties.

1       (b)    That GGS used a privacy service in the registration of the Disputed Domains to conceal its identity, which is supported only by hearsay in a declaration by Defendants' counsel who states that *another* lawyer told him that GGS used a privacy service. *See*, D.E. 51-1, ¶ 10.

      Defendants are required to support their claims because only then does the burden shift to Plaintiffs to establish the existence of a material factual dispute. *See*, *Marshall v. La Mesa Rehab. & Care Ctr.*, 2017 WL 6441836, at *1 (D. Ariz. Dec. 18, 2017) ("The party seeking summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' ... The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute." (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))).

      Accordingly, given that Defendants have failed to provide appropriate support for their material facts (including, as will be shown, perhaps the most material fact at all that they even *have* trademark rights), the Motion should be denied.

      Plaintiffs expect that Defendants may attempt to somehow remedy these significant procedural, supportive and factual issues in their reply brief, in which case Plaintiffs would be even further prejudiced because they could not then respond to new arguments or factual assertions made by Defendants. The Court should not allow Defendants to litigate by ambush in this manner. *See*, *also*, LRCiv 56.1(b) ("No reply statement of facts may be filed.").

**FACTS**

In compliance with LRCiv 56.1(b), Plaintiffs file with this Opposition a Controverting Statement of Facts ("CSF").  Given that Defendants did not file a Statement of Facts in accordance with LRCiv 56.1(a), Plaintiffs cannot present in the CSF one-to-one responses to each fact referenced in the Motion, but respond generally to factual issues below.  However, the CSF does include additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of Defendants in accordance with LRCiv 56.1(b)(2).

As a general matter, Defendants' presentation of facts appears to intentionally blur the line between each of the individual Defendants so that Defendants can engage in a sleight of hand exercise about who, if any of them, owns the rights to the putative trademarks.  They do this by defining all three defendants as "Ritzio" and only using that conglomerated moniker throughout.  Defendants do not explain which, if any, of the Defendants are the operators of the purported "250 highly successful 'brick and mortar' gaming clubs across Europe." Motion, p. 1.  And there is no explanation as to which of the three Defendants use the purported VULKAN Trademarks, how they each use them, or how the three parties are related.  Motion, p. 1.

On page 3 of the Motion, Defendants claim that "Ritzio is the owner of the VULKAN Trademarks" and that "Ritzio is in the business of providing goods and services in the fields of gaming, lotteries, and betting ... including through the website at the domain 'vulka-casino.de,'" as if all three Defendants are just one entity called "Ritzio."  But looking closely at the purportedly supporting documentation, it is

1  questionable whether *any* of the Defendants are the owners or are in the business
2  claimed. Defendants rely on Exhibits 7 through 9 for these statements, all of which are
3  printouts from websites. Of course, each of these printouts, and the information in them,
4  should be disregarded by this Court on the basis that the statements made on the websites
5  are hearsay and not made under oath. But in any case, Exhibits 7 and 8, which purport to
6  support the assertion that Defendants provide goods and services do no such thing.
7  Exhibits 7 and 8 are printouts from the website ritzio.com. Ritzio.com is not registered to
8  Defendant Ritzio Purchase Limited, or any of the other Defendants, but instead to another
9  entity called Ritzio International Limited. CSF, ¶ 1. Even on its very face, Exhibit 7 says
10 that it relates to "Ritzio International," and not to any of the Defendants. D.E. 51-7.
11 Exhibit 9 on the other hand is a printout from the website at the domain name vulkan-
12 casino.de. Visiting that website however, the website says itself that it is not operated by
13 any of the Defendants, but instead another party called Ritzio Berlin GmbH. CSF, ¶ 2. It
14 should go without saying, but Defendants cannot succeed on their motion for summary
15 judgment if the evidence shows that they are not the trademark owners. Nor can or
16 should they get around this requirement by referring to themselves as an anonymous and
17 amorphous blob of companies called "Ritzio."
18    Defendants then proceed to set forth further factual allegations based on nothing
19 more than the hearsay set forth in the UDRP Administrative Panel's decision and filings
20 made in that proceeding. *See* Motion, pp. 2-5, 10-12. Aside from being inadmissible
21 hearsay, it should be noted that the UDRP's Administrative Panel's decision is not
22 binding precedent and has absolutely no effect on this Court's duty to independently

decide the merits of the dispute.  *See*, *e.g.*, *Barcelona.com, Incorporated v. Excelentisimo Ayuntamieto De Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003) ("[A]ny decision made by a panel under the UDRP is no more than an agreed-upon administration that is *not* given any deference under the ACPA.  To the contrary, because a UDRP decision is susceptible of being grounded on principles foreign or hostile to American law, the ACPA authorizes reversing a panel decision if such a result is called for by application of the Lanham Act....  [W]e give the decision of the WIPO panelist no deference in deciding this action...."); *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 28 (1st Cir. 2001) (explaining that 'a federal court's interpretation of the ACPA supplants a WIPO panel's interpretation of the UDRP"); *AIRFX.com v. AirFX LLC*, 2011 WL 5007919 at *2 (D. Ariz. Oct 20, 2011) ("To support this argument, defendant cites to UDRP panel decisions.  But federal courts do not defer to UDRP decisions.").  Accordingly, Exhibits 10, 11 and 12 of Defendant's Motion should be struck, as well as any factual assertions purportedly supported by them.

Contrary to Defendants' assertion in multiple places in their Motion, GGS *never* admitted that at least twenty of the Disputed Domains are identical or confusingly similar to Ritzio's purported VULKAN Trademark.  Motion, p. 5, 8.  Quite to the contrary, as Plaintiffs argued in the UDRP proceeding, "to the extent that [Defendants] have ANY trademark rights at all (which [Plaintiffs] dispute), those rights are weak given the many parties that use similar sounding and looking marks and image[s] for gambling....  Therefore, the further distinguishing terms used in the Disputed Domains (e.g., deluxe,

club, lucky, million, etc.) are sufficient to distinguish [Plaintiffs'] domain names from the Disputed Registrations." D.E. 51-10, pp. 16-17.

## LEGAL ARGUMENT

As an initial matter, Defendants' Motion fails to make any reference whatsoever to Plaintiffs' Affirmative Defenses. Those affirmative defenses defeat Defendants' argument that it must be successful on its cause of action under the ACPA,[2] specifically under Section 1125(d) of Title 15. The material undisputed facts show that Plaintiffs can and will succeed on their affirmative defenses that (1) Defendants do not have trademark rights in the VULKAN mark, particularly not in the regions where Plaintiffs operate, and (2) that Defendants have consented to Plaintiffs' use of the VULKAN mark, or that laches or waiver applies. Moreover, there exist material disputed facts as to whether Defendants could succeed on their ACPA claim, even absent the affirmative defenses.

**I.     Defendants Do Not Have Enforceable Trademark Rights**

Defendants cannot succeed on their cause of action under the ACPA, and therefore cannot succeed in dismissing Plaintiffs' cause of action for reverse trademark hijacking, because they have not fulfilled their burden to show that they have any enforceable trademark rights in the VULKAN name. As an initial matter, and as already set forth above, it is not clear which of the Defendants, if any of them rather than some third

---

[2] As mentioned in the Motion, Defendants' cause of action under the ACPA is the mirror of Plaintiffs' claim for reverse domain name hijacking under the ACPA pursuant to Section 1114(2)(D)(v). *See Ricks v. BMEzine.com, LLC*, 727 F.Supp.2d 936, 960 (D. Nev. 2010) ("The Court therefore concludes that to satisfy the ACPA's requirement that a domain name registrant show that its conduct was not unlawful under "this Act," it must show its conduct was not unlawful under only the ACPA, not the entire Lanham Act.").

parties, actually own the putative VULKAN trademark and operate under the name. Defendants rely on documents and information that state that third parties actually operate, for instance, the vulkan-casino.de and ritzio.com websites.  Only "the owner of a mark" can bring a cause of action under the ACPA. 15 U.S.C. § 1125(d)(1)(A). Defendants have not shown by any competent evidence that any of them are the owners of any mark.  Even the trademark registrations attached as Exhibits 2-6 are not supported by any declaration or other statement under oath by any of the Defendants.

But, furthermore, Defendants have no trademark rights in the regions in which Plaintiffs operate.  It is well known that trademark rights are territorial.  A trademark owner must either have a trademark registration in the territory in which it seeks to prosecute its rights or have senior common law rights as a result of continuing use in that territory.  *See*, *e.g.*, *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F.Supp.2d 953, 958 (C.D. Cal. 2012) ("One can establish enforceable trademark rights through the use of a trademark in commerce and federal registration ... or by virtue of common law trademark in a particular area....  To establish common law trademark rights in a geographical area, OPI had to be the first to use the name 'Optimal Pets' in commerce to designate the pertinent products in the area and had to continue to so use the name in that area.").

The websites at each of the Disputed Domains at issues in this litigation were available only in the Russian language and were aimed only at Russian-speaking users. CSF, ¶ 3.  The only territory at issue therefore is Russia, and the question is therefore whether Defendants have any trademark rights in Russia.  To the extent that Defendants

ever operated in Russia,[3] Russia banned all online gambling in late 2006, with the effect that Defendants could not have any legal online gambling operations directed to Russia. CSF, ¶ 4. Defendants would have also ceased all brick-and-mortar gambling operations in Russia in early 2009 as a result of another Russian law that made all gambling virtually illegal throughout Russia. CSF, ¶ 5. While Defendants attach a Russian trademark registration for VULKAN as Exhibit 3, by the very terms of that same document, ***the registration expired on November 18, 2015***, three years before the Defendants filed their counterclaims. CSF, ¶ 6. Accordingly, Defendants have no enforceable rights in Russia, where Plaintiffs operate, through any trademark registration. Nor do they have any common law rights through continuous operation. Even if the court considers the hearsay submitted with Defendants' Motion, the undefined "Ritzio" only currently operates in Croatia, Germany and Romania.[4] D.E. 51-7, p. 3. "To maintain a common law trademark right there must be continuing use." *Optimal Pets, Inc.*, 877 F.Supp.2d at 959. Because Defendants have not been continuing to use their putative trademark in Russia since 2009 at the latest, there cannot be said to have any rights that they can enforce against Plaintiffs in Russia (and none of the parties operate in the U.S., CSF ¶ 7). Accordingly, Defendants have not shown that there exists undisputed material facts that they can succeed on their cause of action under the ACPA because, among other things, Defendants cannot even show that they have enforceable trademark rights.

---

[3] A question left unanswered by admissible evidence in Defendants' Motion.
[4] The Court may take judicial notice that Russian is not a language commonly spoken in any of these places.

## II.     Affirmative Defenses of Consent and Laches

Plaintiffs have asserted the affirmative defenses of "waiver, explicit consent, implicit consent, implied license, license, acquiescence, laches, estoppel, desire and/or the intention" of Defendants to Plaintiffs' use of the VULKAN mark (to the extent Defendants have any enforceable rights in it at all).  D.E. 28, p. 8, ¶ 12.

GGS began using the term "Vulkan" for websites where users could play slot-machine-like games and win prizes (websites like those that were at the Disputed Domains), back in the year 2011, when GGS began operating the website at Vulcan-casino.com shortly after it was registered on June 15, 2011.  CSF, ¶ 8.  GGS has operated numerous other domain names and websites incorporating that term since then, including the Disputed Domains. *Id.*  GGS operated the websites, including at the Disputed Domains, openly and in full view and with the implicit and explicit consent of Ritzio Purchase Limited for at least four years, from 2011 through 2015.  CSF, ¶ 9.  As already noted, the VULKAN trademark registration in Russia expired in 2015.  GGS registered domain names, including the Domain Names, that incorporate the term "Vulkan" or variations thereon, because it knew at the time that Ritzio Purchase Limited no longer had any trademark rights in Russia for gambling related activities because, to the extent it ever operated in Russia, it had stopped operating in Russia since 2009.  CSF, ¶ 10.  Between 2011 and 2015, GGS had extensive discussions with Ritzio Purchase Limited regarding its websites that used the Vulkan name.  CSF, ¶ 11.  There were even discussions through the years to form a joint project between GGS and Ritzio Purchase

Limited. *Id.* Ritzio Purchase Limited knew about GGS's use and operation of the domains for many years. CSF, ¶ 12.

Ritzio Purchase Limited also had knowledge of other people using the "Vulkan" name in the same way that GGS was using it, and Ritzio Purchase Limited did nothing to stop them. CSF, ¶ 13. For instance, GGS previously had a business relationship with a company called EvoPlay LLP ("EvoPlay"). CSF, ¶ 14. As part of this business relationship, the management of GGS and EvoPlay shared information and ideas regarding operating gaming websites like at the Disputed Domains. *Id.* GGS learned that EvoPlay operated websites at dozens of domain names incorporating the "vulkan" word, all without any form of license from Ritzio Purchase Limited. CSF, ¶ 15.

The foregoing facts satisfy any number of the affirmative defenses asserted by Plaintiffs. Based on the foregoing, Defendants either explicitly consented or implicitly consented to Plaintiffs' actions and omissions. Defendants also waived their rights, and/or their failure to act constitutes laches, as Defendants unreasonably delayed taking any action on Plaintiffs actions, during which time Plaintiffs continued to expend efforts into the operation and growth of their websites. *See Eat Right Foods Ltd. v. Whole Foods Market, Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018) ("The affirmative defense of laches 'is an equitable time limitation on a party's right to bring suit, which is derived from the maxim that those who sleep on their rights, lose them.'" (quoting *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006))). And not only did Defendants sleep on their rights with regards to Plaintiffs, but with regards to other parties like EvoPlay.

On the basis of the foregoing, the Court should deny Defendants' Motion in its entirety on the basis that Defendants have not and cannot show that Plaintiffs will not succeed on their affirmative defenses.

### III.     Defendants Cannot Succeed on their ACPA Claim

Aside from the foregoing issues, there exist material disputed facts as to whether Defendants can succeed on their cause of action under the ACPA.  But perhaps more importantly, Defendants have ignored an absolute bar to their success under the ACPA.

#### A.     Plaintiffs Believed That Their Use of the Domain Names Were Lawful

A successful finding in favor of a claimant under 15 U.S.C. § 1125(d) requires that the person who registers or uses the domain name "has a bad faith intent to profit."  15 U.S.C. § 1125(d)(1)(A)(i).  Though Defendants spend much of the Motion covering the nine factors for "bad faith" set forth in Section 1125(d)(1)(B)(i), they completely ignore Section 1125(d)(1)(B)(ii), which states:

> Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful.

Other courts have called Section 1125(d)(1)(B)(ii) "a safe harbor provision, precluding a finding of bad faith." *Ricks v. BMEzine.com, LLC*, 727 F.Supp.2d 936, 960 (D. Nev. 2010).  In this case, the evidence overwhelmingly indicates that Plaintiffs had both a subjective and objective belief that their use of the Disputed Domains were lawful.

GGS began using the term "Vulkan" for websites back in the year 2011, when GGS began operating the website at Vulcan-casino.com.  CSF, ¶ 8.  The websites at the

Disputed Domains are all targeted towards Russian speakers in Russia. CSF, ¶ 3. On account of the laws referenced above, Defendants, to the extent they had ever operated in Russia, have not been operating in Russia since 2009 at the very latest. CSF, ¶¶ 4-5. Accordingly, GGS registered the domains because it knew at the time that Defendants no longer had any trademark rights in Russia. CSF, ¶ 10. Between 2011 and 2015, GGS also had extensive discussions with Ritzio regarding its websites that used the Vulkan name and discussed joint projects. CSF, ¶ 11. Ritzio Purchase Limited knew about GGS's use and operation of the domains for many years, yet did nothing. CSF, ¶ 12.

On the basis of all of the foregoing, the evidence is clear that Plaintiffs believed, and had reasonable grounds to believe, that their registration and use of the domain names were fair use or otherwise lawful. Accordingly, Defendants cannot succeed on their cause of action under the ACPA and this Court must deny the Motion.

**B.      There Exist Disputed Facts Regarding the Other Bad Faith Factors**

Defendants cannot succeed on their Motion because there also exist material disputed facts as to the other bad faith factors under Section 1125(d)(1)(B)(i). Specifically, but without limitation, given that GGS has been operating websites under the "Vulkan" name in Russia since 2011 at the latest, and Defendants have had no operations in Russia since 2009, GGS has in fact obtained common law trademark rights to "Vulkan" in Russia and is in fact actually known as "Vulkan." 15 U.S.C. §§ 1125(d)(1)(B)(i)(I) and (II). GGS's use of the domain name is also in connection with a bona fide offering of goods and services in that GGS offers gaming services comparable to that which Defendants purport to provide elsewhere in the world. *Id.* at (III).

Defendants' only argument that the services are not bona fide is that the domain names allegedly infringe their rights (Motion, p. 11) – but this argument presupposes its conclusion.  Defendants have also shown no evidence of intent to divert customers from Defendants' own online locations (this would be impossible given that Defendants don't operate vulkan-casino.de). *Id.* at (V). Defendants then transmogrify factor VI to claim that Plaintiffs' use of a privacy service is the same as providing "material and misleading false contact information when applying for the registration of the domain name." *Id.* at (VII).  Not only is this legally incongruent with the statute, but Plaintiffs used a privacy service because they wanted to limit the amount of spam they received.  CSF, ¶ 16. While Plaintiffs did register multiple domain names, they did so with the good faith belief that it was not unlawful for them to do so (and, as argued above, it was in fact not unlawful for them to do so).  15 U.S.C. §§ 1125(d)(1)(B)(i)(VIII).  And there is also no evidence that Plaintiffs attempted to sell the Disputed Domains without using them for a bona fide offering of services. *Id.* at (VI). Accordingly, there is no bad faith, or at the very least there exists a dispute as to material facts relating to bad faith.

Furthermore, as already noted, the Disputed Domains are distinguishable from Defendants' putative trademarks given the appended words in them.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this honorable Court deny Defendants' Motion for Summary Judgment.

Dated: October 28, 2019

Plaintiffs
By their Attorneys,

/s/ Matthew Shayefar
Matthew Shayefar (*pro hac vice*)
Valentin Gurvits (*pro hac vice*)
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:   (617) 928-1800
Fax:   (617) 928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

**Certificate of Service**

I hereby certify that the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the service list below on October 28, 2019.

/s/ Matthew Shayefar
Matthew Shayefar

**Service List**

Douglas A. Grady
dgrady@bakerlaw.com
BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, Washington 98104

Clair C. Pena
cpena@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, Ohio 44114