**Valentin Gurvits** (*pro hac vice*)
vgurvits@bostonlawgroup.com
**Matthew Shayefar** (*pro hac vice*)
matt@bostonlawgroup.com
**Boston Law Group, PC**
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel: 617-928-1800 | Fax: 617-928-1802

*Attorneys for Plaintiffs/Counter-Defendants*

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA

| | |
|---|---|
| **GGS Ltd**, an Anguilla company, and **InfoStar Management Ltd,** an English company, <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> **Ritzio Purchase Limited**, a Cyprus company, **Dareos Inc.**, a Marshall Islands company, and **Dareos Ltd.**, a Cyprus company, <br><br> Defendants/Counter-Claimants. | Case No.: CV-18-01512-PHX-DWL <br><br> **Plaintiffs' Restated[1] Opposition to Defendants' Motion for Summary Judgment** |

Plaintiffs GGS Ltd. and InfoStar Management Ltd. hereby oppose Defendants'

Motion for Summary Judgment (the "Motion") seeking judgment in Defendants' favor on

---

[1] As set forth in Plaintiffs' concurrently filed Motion to Strike and Replace, this Opposition replaces an Opposition filed earlier that failed to take into consideration the Court's Order of December 17, 2018, Docket No. 36, § 8(c).

1

the causes of action arising from the Anti-Cybersquatting Consumer Protection Act (the "ACPA"), which would result in the transfer of twenty-two domain names referenced in the Complaint (D.E. 1, ¶¶ 18-20) (the "Disputed Domains") to Defendants.

The Motion should be denied for numerous reasons. First, there exist disputed material facts as to numerous issues, including as whether Defendants have any enforceable trademark rights at all. Defendants' Motion has also failed to take into consideration Plaintiffs' affirmative defenses, which are supported by undisputed facts. Finally, Defendants have failed to show that they have succeeded on their cause of action based on undisputed facts given that the undisputed facts require a finding for Plaintiffs at trial.

**PRELIMINARY PROCEDURAL ARGUMENT**

**I.      The Motion Should Be Denied for Failing to Support Facts**

Many of the facts sprinkled throughout Defendants' Motion are unsupported by any citation to materials in the record. Federal Rule of Civil Procedure 56(c)(1) requires that Defendants support their assertions by "citing to particular parts of materials in the record." This Court's case management order requires that "All evidence to support a motion or response that is not already part of the record must be attached to the motion or response itself." Docket No. 35, p. 5.

Defendants' Motion is littered with facts without any attempt at support, and even more without appropriate support. The two first sentences of the Motion appear to be the very foundation for Defendants' trademark rights, with allegations that Defendants have hundreds of brick and mortar clubs and billions in revenue, but there is NO support for

these statements whatsoever. Other purported facts on page 3 of the Motion claim that "Ritzio"[2] provides gaming services through a website at the domain "vulkan-casino.de," but Defendants' only putative support for the statement is to reference printouts from the website at the domain name, which not only constitutes hearsay, but which does not indicate that any of the named Defendants actually operate the website (in fact, as will be shown, the website is operate by some third party).

Defendants make other conclusory claims without proper support that must be disregarded. *See*, *e.g.*, *Petty v. Arizona*, 2018 WL 2220665, at *1 (D. Ariz. May 15, 2018) ("Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment." (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989))); *Wanmei Ni v. Univ. of Arizona*, 2018 WL 1382527, at *6 (D. Ariz. Mar. 19, 2018) ("Here, Plaintiff's controverting facts do not contain a single citation to the record.... [B]are factual allegations and conclusory statements have not been given any weight."). Some of those conclusory and unsupported claims include:

(a) That GGS does not have trademark or other intellectual property rights in any of the Dispute Domains, and that GGS has never been known by "Vulkan," made without any citations whatsoever, where in reality GGS has trademark rights and has

---

[2] As detailed below, Defendants use the name "Ritzio" indiscriminately throughout the Motion to refer to all three Defendants, but never explain which of the three Defendants the particular fact actually refers to. Defendants appear to be engaging in sleight of hand, given that in a few circumstances Plaintiffs have been able to determine that the factual assertions actually relate to *none* of the Defendants, but third parties.

3

been known by "Vulkan" given that it has been operating websites under that name since 2011 (detailed below).

(b) That GGS used a privacy service in the registration of the Disputed Domains to conceal its identity, which is supported only by hearsay in a declaration by Defendants' counsel who states that *another* lawyer told him that GGS used a privacy service. *See*, D.E. 51-1, ¶ 10.

Defendants are required to support their claims because only then does the burden shift to Plaintiffs to establish the existence of a material factual dispute. *See*, *Marshall v. La Mesa Rehab. & Care Ctr.*, 2017 WL 6441836, at *1 (D. Ariz. Dec. 18, 2017) ("The party seeking summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' ... The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute." (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))).

Accordingly, given that Defendants have failed to provide appropriate support for their material facts (including, as will be shown, perhaps the most material fact at all that they even *have* trademark rights), the Motion should be denied.

Plaintiffs expect that Defendants may attempt to somehow remedy these supportive and factual issues in their reply brief, in which case Plaintiffs would be prejudiced because they could not then respond to new arguments or factual assertions made by Defendants. The Court should not allow Defendants to litigate by ambush in

this manner.  *See*, *also*, Docket No. 36, p. 5 ("No evidence may be submitted with a reply.").

**FACTS**

Plaintiffs herein respond to the factual assertions set forth by Defendants in their Motion.  Plaintiffs' further factual assertions are set forth in the arguments sections below.

As a general matter, Defendants' presentation of facts appears to intentionally blur the line between each of the individual Defendants so that Defendants can engage in a sleight of hand exercise about who, if any of them, owns the rights to the putative trademarks.  They do this by defining all three defendants as "Ritzio" and only using that conglomerated moniker throughout.  Defendants do not explain which, if any, of the Defendants are the operators of the purported "250 highly successful 'brick and mortar' gaming clubs across Europe."  Motion, p. 1.  And there is no explanation as to which of the three Defendants use the purported VULKAN Trademarks, how they each use them, or how the three parties are related.  Motion, p. 1.

On page 3 of the Motion, Defendants claim that "Ritzio is the owner of the VULKAN Trademarks" and that "Ritzio is in the business of providing goods and services in the fields of gaming, lotteries, and betting ... including through the website at the domain 'vulkan-casino.de,'" as if all three Defendants are just one entity called "Ritzio."  But looking closely at the purportedly supporting documentation, it is questionable whether *any* of the Defendants are the owners or are in the business claimed.  Defendants rely on Exhibits 7 through 9 for these statements, all of which are

printouts from websites.  Of course, each of these printouts, and the information in them, should be disregarded by this Court on the basis that the statements made on the websites are hearsay and not made under oath.  But in any case, Exhibits 7 and 8, which purport to support the assertion that Defendants provide goods and services do no such thing.  Exhibits 7 and 8 are printouts from the website ritzio.com.  Ritzio.com is not registered to Defendant Ritzio Purchase Limited, or any of the other Defendants, but instead to another entity called Ritzio International Limited.  Declaration of Matthew Shayefar in Opposition to Defendants' Motion for Summary Judgment, Exhibit B, [hereinafter, "Shayefar Decl."], ¶ 1; Exhibit C.  Even on its very face, Exhibit 7 says that it relates to "Ritzio International," and not to any of the Defendants.  D.E. 51-7.  Exhibit 9 on the other hand is a printout from the website at the domain name vulkan-casino.de.  Visiting that website however, the website says itself that it is not operated by any of the Defendants, but instead another party called Ritzio Berlin GmbH.  Shayefar Decl., ¶ 2; Exhibits E-F.  It should go without saying, but Defendants cannot succeed on their motion for summary judgment if the evidence shows that they are not the trademark owners.  Nor can or should they get around this requirement by referring to themselves as an anonymous and amorphous blob of companies called "Ritzio."

  Defendants then proceed to set forth further factual allegations based on nothing more than the hearsay set forth in the UDRP Administrative Panel's decision and filings made in that proceeding.  *See* Motion, pp. 2-5, 10-12.  Aside from being inadmissible hearsay, it should be noted that the UDRP's Administrative Panel's decision is not binding precedent and has absolutely no effect on this Court's duty to independently

1  decide the merits of the dispute.  *See*, *e.g.*, *Barcelona.com, Incorporated v. Excelentisimo Ayuntamieto De Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003) ("[A]ny decision made by a panel under the UDRP is no more than an agreed-upon administration that is *not* given any deference under the ACPA.  To the contrary, because a UDRP decision is susceptible of being grounded on principles foreign or hostile to American law, the ACPA authorizes reversing a panel decision if such a result is called for by application of the Lanham Act....  [W]e give the decision of the WIPO panelist no deference in deciding this action...."); *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 28 (1st Cir. 2001) (explaining that 'a federal court's interpretation of the ACPA supplants a WIPO panel's interpretation of the UDRP"); *AIRFX.com v. AirFX LLC*, 2011 WL 5007919 at *2 (D. Ariz. Oct 20, 2011) ("To support this argument, defendant cites to UDRP panel decisions.  But federal courts do not defer to UDRP decisions.").  Accordingly, Exhibits 10, 11 and 12 of Defendant's Motion should be struck, as well as any factual assertions purportedly supported by them.

Contrary to Defendants' assertion in multiple places in their Motion, GGS *never* admitted that at least twenty of the Disputed Domains are identical or confusingly similar to Ritzio's purported VULKAN Trademark.  Motion, p. 5, 8.  Quite to the contrary, as Plaintiffs argued in the UDRP proceeding, "to the extent that [Defendants] have ANY trademark rights at all (which [Plaintiffs] dispute), those rights are weak given the many parties that use similar sounding and looking marks and image[s] for gambling.... Therefore, the further distinguishing terms used in the Disputed Domains (e.g., deluxe,

7

club, lucky, million, etc.) are sufficient to distinguish [Plaintiffs'] domain names from the Disputed Registrations." D.E. 51-10, pp. 16-17.

## LEGAL ARGUMENT

As an initial matter, Defendants' Motion fails to make any reference whatsoever to Plaintiffs' Affirmative Defenses. Those affirmative defenses defeat Defendants' argument that it must be successful on its cause of action under the ACPA,[3] specifically under Section 1125(d) of Title 15. The material undisputed facts show that Plaintiffs can and will succeed on their affirmative defenses that (1) Defendants do not have trademark rights in the VULKAN mark, particularly not in the regions where Plaintiffs operate, and (2) that Defendants have consented to Plaintiffs' use of the VULKAN mark, or that laches or waiver applies. Moreover, there exist material disputed facts as to whether Defendants could succeed on their ACPA claim, even absent the affirmative defenses.

## I.     Defendants Do Not Have Enforceable Trademark Rights

Defendants cannot succeed on their cause of action under the ACPA, and therefore cannot succeed in dismissing Plaintiffs' cause of action for reverse trademark hijacking, because they have not fulfilled their burden to show that they have any enforceable trademark rights in the VULKAN name. As an initial matter, and as already set forth above, it is not clear which of the Defendants, if any of them rather than some third

---

[3] As mentioned in the Motion, Defendants' cause of action under the ACPA is the mirror of Plaintiffs' claim for reverse domain name hijacking under the ACPA pursuant to Section 1114(2)(D)(v). *See Ricks v. BMEzine.com, LLC*, 727 F.Supp.2d 936, 960 (D. Nev. 2010) ("The Court therefore concludes that to satisfy the ACPA's requirement that a domain name registrant show that its conduct was not unlawful under "this Act," it must show its conduct was not unlawful under only the ACPA, not the entire Lanham Act.").

1  parties, actually own the putative VULKAN trademark and operate under the name.

2  Defendants rely on documents and information that state that third parties actually

3  operate, for instance, the vulkan-casino.de and ritzio.com websites.   Only "the owner of

4  a mark" can bring a cause of action under the ACPA.  15 U.S.C. § 1125(d)(1)(A).

5  Defendants have not shown by any competent evidence that any of them are the owners

6  of any mark.  Even the trademark registrations attached as Exhibits 2-6 are not supported

7  by any declaration or other statement under oath by any of the Defendants.

8       But, furthermore, Defendants have no trademark rights in the regions in which

9  Plaintiffs operate.  It is well known that trademark rights are territorial.  A trademark

10  owner must either have a trademark registration in the territory in which it seeks to

11  prosecute its rights or have senior common law rights as a result of continuing use in that

12  territory.  *See*, *e.g.*, *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F.Supp.2d 953, 958 (C.D.

13  Cal. 2012) ("One can establish enforceable trademark rights through the use of a

14  trademark in commerce and federal registration ... or by virtue of common law trademark

15  in a particular area.... To establish common law trademark rights in a geographical area,

16  OPI had to be the first to use the name 'Optimal Pets' in commerce to designate the

17  pertinent products in the area and had to continue to so use the name in that area.").

18       The websites at each of the Disputed Domains at issues in this litigation were

19  available only in the Russian language and were aimed only at Russian-speaking users.

20  Declaration in Opposition to Defendants' Motion for Summary Judgment by Paata

21  Zakareishvili on behalf of GGS Ltd. filed herewith [hereinafter, "GGS Decl."], ¶ 4.  The

22  only territory at issue therefore is Russia, and the question is therefore whether

Defendants have any trademark rights in Russia.  To the extent that Defendants ever operated in Russia,[4] Russia banned all online gambling in late 2006, with the effect that Defendants could not have any legal online gambling operations directed to Russia.  *See* Exhibit G, Federal Law of December 29, 2006 No. 244FZ, "On government regulation of gambling activities and on introduction of amendments to some legislative acts of Russian Federation," §§ 5.3&5.4.  *See*, *also*, Exhibit H.  Defendants would have also ceased all brick-and-mortar gambling operations in Russia in early 2009 as a result of another Russian law that made all gambling virtually illegal throughout Russia.  *Id*.  While Defendants attach a Russian trademark registration for VULKAN as Exhibit 3, by the very terms of that same document, **the registration expired on November 18, 2015**, three years before the Defendants filed their counterclaims.  Docket No. 51-3; Shayefar Decl., ¶ 3. Accordingly, Defendants have no enforceable rights in Russia, where Plaintiffs operate, through any trademark registration.  Nor do they have any common law rights through continuous operation.  Even if the court considers the hearsay submitted with Defendants' Motion, the undefined "Ritzio" only currently operates in Croatia, Germany and Romania.[5]  D.E. 51-7, p. 3.  "To maintain a common law trademark right there must be continuing use." *Optimal Pets, Inc.*, 877 F.Supp.2d at 959.  Because Defendants have not been continuing to use their putative trademark in Russia since 2009 at the latest, they cannot be said to have any rights that they can enforce

---

[4] A question left unanswered by admissible evidence in Defendants' Motion.
[5] The Court may take judicial notice that Russian is not a language commonly spoken in any of these places.

against Plaintiffs in Russia (and none of the parties operate in the U.S., GGS Decl., ¶¶ 13-14). Accordingly, Defendants have not shown that there exists undisputed material facts that they can succeed on their cause of action under the ACPA because, among other things, Defendants cannot even show that they have enforceable trademark rights.

## II.     Affirmative Defenses of Consent and Laches

Plaintiffs have asserted the affirmative defenses of "waiver, explicit consent, implicit consent, implied license, license, acquiescence, laches, estoppel, desire and/or the intention" of Defendants to Plaintiffs' use of the VULKAN mark (to the extent Defendants have any enforceable rights in it at all). Docket No. 28, p. 8, ¶ 12.

GGS began using the term "Vulkan" for websites where users could play slot-machine-like games and win prizes (websites like those that were at the Disputed Domains), back in the year 2011, when GGS began operating the website at Vulcan-casino.com shortly after it was registered on June 15, 2011. GGS Decl., ¶ 5. GGS has operated numerous other domain names and websites incorporating that term since then, including the Disputed Domains. *Id.* GGS operated the websites, including at the Disputed Domains, openly and in full view and with the implicit and explicit consent of Ritzio Purchase Limited for at least four years, from 2011 through 2015. GGS Decl., ¶ 6. As already noted, the VULKAN trademark registration in Russia expired in 2015. GGS registered domain names, including the Domain Names, that incorporate the term "Vulkan" or variations thereon, because it knew at the time that Ritzio Purchase Limited no longer had any trademark rights in Russia for gambling related activities because, to the extent it ever operated in Russia, it had stopped operating in Russia since 2009. GGS

Decl., ¶ 7.  Between 2011 and 2015, GGS had extensive discussions with Ritzio Purchase Limited regarding its websites that used the Vulkan name.  GGS Decl., ¶ 8.  There were even discussions through the years to form a joint project between GGS and Ritzio Purchase Limited.  *Id.*  Ritzio Purchase Limited knew about GGS's use and operation of the domains for many years.  *Id.*

Ritzio Purchase Limited also had knowledge of other people using the "Vulkan" name in the same way that GGS was using it, and Ritzio Purchase Limited did nothing to stop them.  GGS Decl., ¶ 9.  For instance, GGS previously had a business relationship with a company called EvoPlay LLP ("EvoPlay").  *Id.*, ¶ 10.  As part of this business relationship, the management of GGS and EvoPlay shared information and ideas regarding operating gaming websites like at the Disputed Domains.  *Id.*  GGS learned that EvoPlay operated websites at dozens of domain names incorporating the "vulkan" word, all without any form of license from Ritzio Purchase Limited.  *Id.*, ¶ 11.

The foregoing facts satisfy any number of the affirmative defenses asserted by Plaintiffs.  Based on the foregoing, Defendants either explicitly consented or implicitly consented to Plaintiffs' actions and omissions.  Defendants also waived their rights, and/or their failure to act constitutes laches, as Defendants unreasonably delayed taking any action on Plaintiffs actions, during which time Plaintiffs continued to expend efforts into the operation and growth of their websites.  *See Eat Right Foods Ltd. v. Whole Foods Market, Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018) ("The affirmative defense of laches 'is an equitable time limitation on a party's right to bring suit, which is derived from the maxim that those who sleep on their rights, lose them.'" (quoting *Miller v. Glenn Miller*

*Prod., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006))).  And not only did Defendants sleep on their rights with regards to Plaintiffs, but with regards to other parties like EvoPlay.

On the basis of the foregoing, the Court should deny Defendants' Motion in its entirety on the basis that Defendants have not and cannot show that Plaintiffs will not succeed on their affirmative defenses.

### III.     Defendants Cannot Succeed on their ACPA Claim

Aside from the foregoing issues, there exist material disputed facts as to whether Defendants can succeed on their cause of action under the ACPA.  But perhaps more importantly, Defendants have ignored an absolute bar to their success under the ACPA.

#### A.     Plaintiffs Believed That Their Use of the Domain Names Were Lawful

A successful finding in favor of a claimant under 15 U.S.C. § 1125(d) requires that the person who registers or uses the domain name "has a bad faith intent to profit."  15 U.S.C. § 1125(d)(1)(A)(i).  Though Defendants spend much of the Motion covering the nine factors for "bad faith" set forth in Section 1125(d)(1)(B)(i), they completely ignore Section 1125(d)(1)(B)(ii), which states:

> Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful.

Other courts have called Section 1125(d)(1)(B)(ii) "a safe harbor provision, precluding a finding of bad faith."  *Ricks v. BMEzine.com, LLC*, 727 F.Supp.2d 936, 960 (D. Nev. 2010).  In this case, the evidence overwhelmingly indicates that Plaintiffs had both a subjective and objective belief that their use of the Disputed Domains were lawful.

1    GGS began using the term "Vulkan" for websites back in the year 2011, when
2 GGS began operating the website at Vulcan-casino.com. GGS Decl., ¶ 5. The websites
3 at the Disputed Domains are all targeted towards Russian speakers in Russia. *Id.*, ¶ 4.
4 On account of the laws referenced above, Defendants, to the extent they had ever
5 operated in Russia, have not been operating in Russia since 2009 at the very latest.
6 Exhibit G, §§ 5.3 & 5.4; Exhibit H. Accordingly, GGS registered the domains because it
7 knew at the time that Defendants no longer had any trademark rights in Russia. GGS
8 Decl., ¶ 7. Between 2011 and 2015, GGS also had extensive discussions with Ritzio
9 regarding its websites that used the Vulkan name and discussed joint projects. *Id.*, ¶ 8.
10 Ritzio Purchase Limited knew about GGS's use and operation of the domains for many
11 years, yet did nothing. *Id*.

12    On the basis of all of the foregoing, the evidence is clear that Plaintiffs believed,
13 and had reasonable grounds to believe, that their registration and use of the domain
14 names were fair use or otherwise lawful. Accordingly, Defendants cannot succeed on
15 their cause of action under the ACPA and this Court must deny the Motion.

16    **B.    There Exist Disputed Facts Regarding the Other Bad Faith Factors**

17    Defendants cannot succeed on their Motion because there also exist material
18 disputed facts as to the other bad faith factors under Section 1125(d)(1)(B)(i).
19 Specifically, but without limitation, given that GGS has been operating websites under
20 the "Vulkan" name in Russia since 2011 at the latest, and Defendants have had no
21 operations in Russia since 2009, GGS has in fact obtained common law trademark rights
22 to "Vulkan" in Russia and is in fact actually known as "Vulkan." 15 U.S.C. §§

1125(d)(1)(B)(i)(I) and (II).  GGS's use of the domain name is also in connection with a bona fide offering of goods and services in that GGS offers gaming services comparable to that which Defendants purport to provide elsewhere in the world.  *Id.* at (III).  Defendants' only argument that the services are not bona fide is that the domain names allegedly infringe their rights (Motion, p. 11) – but this argument presupposes its conclusion.  Defendants have also shown no evidence of intent to divert customers from Defendants' own online locations (this would be impossible given that Defendants don't operate vulkan-casino.de).  *Id.* at (V).  Defendants then transmogrify factor VI to claim that Plaintiffs' use of a privacy service is the same as providing "material and misleading false contact information when applying for the registration of the domain name."  *Id.* at (VII).  Not only is this legally incongruent with the statute, but Plaintiffs used a privacy service because they wanted to limit the amount of spam they received.  GGS Decl., ¶ 12.  While Plaintiffs did register multiple domain names, they did so with the good faith belief that it was not unlawful for them to do so (and, as argued above, it was in fact not unlawful for them to do so).  15 U.S.C. §§ 1125(d)(1)(B)(i)(VIII).  And there is also no evidence that Plaintiffs attempted to sell the Disputed Domains without using them for a bona fide offering of services.  *Id.* at (VI).  Accordingly, there is no bad faith, or at the very least there exists a dispute as to material facts relating to bad faith.

     Furthermore, as already noted, the Disputed Domains are distinguishable from Defendants' putative trademarks given the appended words in them.

# CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this honorable Court deny Defendants' Motion for Summary Judgment.

Dated: October 28, 2019

Plaintiffs
By their Attorneys,

/s/ Matthew Shayefar
Matthew Shayefar (*pro hac vice*)
Valentin Gurvits (*pro hac vice*)
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:   (617) 928-1800
Fax:   (617) 928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

**TABLE OF CONTENTS OF EXHIBITS**

| Ex. # | Title |
|---|---|
| A | Declaration in Opposition to Defendants' Motion for Summary Judgment |
| B | Declaration of Matthew Shayefar in Opposition to Defendants' Motion for Summary Judgment |
| C | Whois сервис |
| D | Kontakt |
| E | Imprint |
| F | Data Protection/Privacy Policy |
| G | Federal Law of December 29, 2006 No. 244FZ |
| H | A raw deal for Russia's casino workers |

## Certificate of Service

I hereby certify that the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the service list below on October 28, 2019.

/s/ Matthew Shayefar
Matthew Shayefar

## Service List

Douglas A. Grady
dgrady@bakerlaw.com
BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, Washington 98104

Clair C. Pena
cpena@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, Ohio 44114