DOUGLAS A. GRADY (*pro hac vice*)
dgrady@bakerlaw.com
BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, Washington 98104
Telephone: 206-566-7120
Facsimile: 206-624-7317

CLAIR C. PENA
State Bar No. 032756
cpena@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: 216-621-0200
Facsimile: 216-696-0740

Attorneys for Defendants Ritzio Purchase
Ltd., Dareos Inc., and Dareos Ltd.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GGS Ltd. and Infostar Management Ltd., <br><br> Plaintiffs, <br><br> v. <br><br> Ritzio Purchase Ltd., Dareos Inc., and Dareos Ltd., <br><br> Defendants. | No. CV-18-01512-PHX-DWL <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> **Oral Argument Requested** |

After prevailing soundly at WIPO on essentially the same facts, Ritzio filed the underlying summary judgement motion, clearly demonstrating the absence of a genuine issue of material fact. In its Opposition, rather than coming forward with specific facts showing a genuine issue for trial, GGS chose to distract, confuse, and manufacture materiality. Unfortunately for GGS, the lions' share of undisputed material facts is supported by admissions in **GGS's own statements**, both to this Court in GGS's own filings, and to the WIPO Administrative Panel in GGS's filings there. Because no reasonable juror could conclude that GGS is anything but a cybersquatter, summary judgment and attorney fees should be granted in favor of Ritzio.

**DISCUSSION IN REPLY**

**A. Ritzio's Evidence is Admissible at Summary Judgement Because It Can Be Presented in an Admissible Form at Trial**

Rather than first arguing evidence or facts that might create a material factual dispute, GGS's primary argument is that Ritzio's evidence is hearsay and/or otherwise inadmissible at the summary judgment stage. (Dkt. 56 at 3–4, 6, 10.) But the argument ignores clear and controlling legal authority:

> Well-settled Ninth Circuit precedent specifically deals with evidentiary objections at the summary judgment stage. In general, at the summary judgment stage, the Court does not focus on the admissibility of the evidence's *form*, but on the *admissibility of its contents*. Because the evidence could be presented in an admissible form at trial, we may consider the evidence's contents in the summary judgment motion.

*In re Owner Mgmt. Serv., LLC Tr. Corps*, 530 B.R. 711, 718 (Bankr. C.D. Cal. 2015), *aff'd sub nom. OMS, LLC v. Bank of Am., N.A.*, No. CV 15-3876-R, 2015 WL 12712307 (C.D. Cal. Nov. 6, 2015) (internal citations omitted) (emphasis added).

Or course, GGS does not argue that Ritzio's evidence could not be presented in a form that would be admissible at trial. Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Nor could it. Exhibits[1] 2–6 are excerpts from the German, Russian, and WIPO trademark registries. They are public records and are available to the Court for inspection at their respective websites. (Ex. 1). GGS makes no argument regarding the unreliability of this information. As such, these exhibits should be considered by the Court as evidence of Ritzio's trademarks.[2]

Exhibits 7–9 are websites owned and/or operated by Ritzio and Ritzio's affiliates

---

[1] Number Exhibits (*e.g.,* "Ex. 1") shall refer to the exhibits submitted with Ritzio's Summary Judgment Motion (Dkt. 51). Letter exhibits (*e.g.,* "Ex. A") shall refer to exhibits submitted with GGS's Opposition (Dkt. 56).

[2] F.R.E. 803(8)(A)(i); F.R.E. 807; *Domain Vault LLC v. Bush*, No. 14-CV-2621-WJM-CBS, 2015 WL 1598099, at *6 n.3 (D. Colo. Apr. 8, 2015) ("The trademark registrations are indisputably judicially noticeable."); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ("The documents recorded by the PTO were not attached to Kaempe's complaint. However, the cited documents are public records subject to judicial notice on a motion to dismiss.").

Ritzio International Limited and Ritzio Berlin GmbH. GGS's arguments that these websites are operated by "some third party" strains credulity. Counsel for Ritzio, based on personal knowledge gained from Ritzio, declared under penalty of perjury that these websites belong to Ritzio. GGS fails to argue that the facts cited in these exhibits cannot be presented in a form that would be admissible in evidence, and at trial, representatives from Ritzio would confirm the facts in these exhibits. Thus, these Exhibits should be considered by the Court as evidence of Ritzio's business operations, including its operation of the websites at the domains "ritzio.com" and "vulkan-casino.de."

Exhibit 10 is GGS's Certified WIPO Response, and GGS does not dispute the authenticity of the document. GGS's statements within this exhibit are admissible evidence. F.R.E. 801(d)(2); *Dynamis, Inc. v. Dynamis.com*, 780 F. Supp. 2d 465, 472 (E.D. Va. 2011) ("Of course, statements made by a party in the course of UDRP proceedings may be offered by an adverse party pursuant to Rule 801(d)(2).")

The facts for which Exhibit 11 is cited—that GGS used privacy services which shielded their identities in registering the Disputed Domains—is confirmed by Exhibit 10 (on page 3, footnote 1).

Exhibit 12 is a true and accurate copy of the WIPO Decision, and GGS does not dispute its authenticity. The WIPO Decision is presented for context, and because it is the operative decision directing the transfer of the Disputed Domains from GGS to Ritzio. *Hostnut.Com, Inc. v. Go Daddy Software, Inc.*, No. CV05-0094-PHX-DGC, 2006 WL 2573201, at *4 (D. Ariz. Sept. 6, 2006) ("The Court will take judicial notice of the undisputed fact that the decision was issued and found in favor of Defendants, but will not take judicial notice of the truth of the WIPO's findings of fact.").

**B. GGS Does Not Dispute the Vast Majority of Ritzio's Trademark Rights**

The undisputed facts establish that Ritzio has valid and enforceable trademark rights in the VULKAN Trademarks, and GGS introduces no evidence to the contrary.[3] GGS

---

[3] Ritzio concedes that it does not have any registered trademarks or common law VULKAN trademark rights in the United States. That is irrelevant for the purposes of the ACPA, because the ACPA applies to "marks." "Marks" must include foreign marks, otherwise

– 3 –

suggests that Ritzio's websites—which are registered by Ritzio's affiliates Ritzio International Limited and Ritzio Berlin GmbH and are not submitted to evidence Ritzio's trademark rights—show that Defendants Ritzio Purchase Ltd., Dareos Inc., and/or Dareos Ltd. are not the trademark owners and/or licensees of the VULKAN Trademarks. (Dkt. 56 at 5–6).

But each of Exhibits 2–6 are non-limiting examples[4] of Ritzio's VULKAN trademarks, and list either Dareos Inc. or Dareos Ltd. as the holder of the trademark registrations. Ritzio Purchase Ltd. is a licensee of the VULKAN Trademarks. Far from being in dispute, these facts **were admitted** by both GGS, in its Complaint, and Ritzio, in its Answer. (Dkt. 1 at ¶ 28) ("Ritzio recently transferred most of the Disputed Registrations to 'its partners,' Defendants Dareos Ltd. and Dareos Inc., and Ritzio is and will be a licensee of Defendants Dareos Ltd. and Dareos Inc. when all transfers are complete."); (Dkt. 27 at ¶ 28) ("Defendants admit they are business associates, and that Defendants Dareos Ltd. and Dareos Inc. are the current owners of the Disputed Registrations to which Defendant Ritzio takes a license.").

GGS disputes (Dkt. 56 at 8–11) the validity of one of Ritzio's Russian trademarks for VULKAN, No. 353692, registered on November 18, 2005, (Ex. 3) (the "Russian VULKAN Trademark No. 353692"). But contrary to GGS's statements in the Opposition (at 10–11) and the Declaration of Matthew Shayefar (Ex. B ¶ 3), the Russian VULKAN Trademark No. 353692 does not expire until November 18, **2025**, as evidenced by the portion "(186) Дата, до которой продлен срок действия исключительного права:

---

GGS has failed as a matter of law to provide notice to the "mark owner" pursuant to 15 U.S.C. 1114(D)(v). *See Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 24 (1st Cir. 2001) ("In addition, interpreting 'mark owner' to apply only to registered U.S. marks would create a perverse result at odds with our view of the ACPA as granting relief to registrants who have wrongly lost domain names in UDRP proceedings.").

[4] Although Ritzio only submitted evidence of five exemplary VULKAN Trademarks, Ritzio is the holder of over forty valid and unexpired VULKAN trademarks, including over fifteen registered, unexpired VULKAN trademarks in Russia. *See, e.g.,* http://www1.fips.ru/fips_servl/fips_servlet?DB=RUTM&rn=1248&DocNumber=349206&TypeFile=html; http://www1.fips.ru/fips_servl/fips_servlet?DB=RUTM&rn=1248&DocNumber=307880&TypeFile=html.

**18.11.2025**." (Ex. 3 at 4) (emphasis added). If GGS had evidence that the trademark had expired—such as via a government document reflecting the expiration of such rights—it certainly would have introduced such a document.

Contrary to GGS statements that Ritzio's VULKAN trademarks are no longer used in connection with gambling in Russia, Ritzio's partner MatchBet LLC uses Ritzio's VULKAN trademarks in Russia in connection with online sports betting, for which MatchBet LLC has been granted a license to operate.[5] Moreover, Ritzio presented evidence of four other exemplary VULKAN Trademarks for which GGS did not dispute validity. (*See* Exs. 2, 4–6).

GGS's argument (Dkt. 56 at 9) that the "websites at each of the Disputed Domains were available only in the Russian language and were only aimed at Russian-speaking users" and that the only "question is therefore whether [Ritzio] have any trademark rights in Russia" is a red herring. First, GGS does not submit evidence to support the factual premise that its websites were only available in the Russian language and were only aimed at Russian-speaking users, other than a self-serving declaration of Mr. Paata Zakareishvili (Ex. A), a project manager at GGS. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 (9th Cir. 2009) (facts raised only in self-serving affidavit were not sufficient to defeat summary judgment"); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200 MMM (MCX), 2008 WL 11334030, at *9 (C.D. Cal. Mar. 17, 2008) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

Second, this argument misunderstands the global nature of the internet and is incongruent with the legislative intent of the ACPA, which was to create a global solution to a global problem. Even if the websites were only aimed at Russian-speaking users, the websites were accessible globally, including in the countries in which Ritzio has undisputed trademark rights. *See*, *e.g.*, S. REP. 106-140, 8 ("The Internet remains a

---

[5] MatchBet LLC's license from the Russian government to offer sports betting online is available at https://vulkanbet.ru/documents.

– 5 –

relatively new and exciting medium for communication, electronic commerce, education, entertainment, and countless other yet-to-be-determined uses. It is a global medium whose potential is only just beginning to be understood. Abusive conduct, like cybersquatting, threatens the continued growth and vitality of the Internet as a platform for all these uses.").

Third, even accepting the premise of GGS's argument as true, GGS's argument fails because its websites, which were "aimed at Russian-speaking users," would have targeted users in Russian speaking countries in which Ritzio's VULKAN Trademarks are undisputed, such as Belarus, Kyrgyzstan, Kazakhstan, Moldova, Ukraine, Latvia and others. (*See* Exs. 4–6). Therefore, the undisputed facts demonstrate Ritzio's enforceable rights in the VULKAN Trademarks.

### C. There Are No Disputed Facts as to GGS's Confusingly Similar Domains

In the WIPO Proceeding, GGS argued that only forty-two of the one-hundred domains names at issue in that proceeding are not identical or confusingly similar: "[T]o the extent that the Panel even considers whether the Disputed Domains are identical to or confusingly similar to the Disputed Registrations, the Panel should find that a [*sic*] 42 of the Disputed Domains are not identical to or confusingly similar to the Disputed Registrations." (Ex. 10 at 16–17). Only two of the Disputed Domains—"VLK.me" and "Velkam.email"—are included in the 42 domains GGS argued were not identical or confusingly similar to the VULKAN Trademarks. (*Id.*)

In any event, GGS contends now (Dkt. 56 at 15) that the Disputed Domains are not confusingly similar to the VULKAN Trademarks only by virtue of the "appended words" in them. But, as a matter of law, these generic words do nothing to alter the nature of a confusingly similar domain name. (Dkt. 51 at 8). Furthermore, GGS does not dispute that "VLK.me" and "Velkam.email" are visually and aurally similar to the Ritzio's VULKAN trademarks.

### D. The Undisputed Facts Demonstrate GGS's Bad Faith as a Matter of Law

#### 1. GGS's "facts" cannot defeat summary judgment as to bad faith

GGS raises the specter of a number of minor factual disputes through the self-

– 6 –

serving declaration of Mr. Zakareishvili and in the Opposition itself. These manufactured issues do not raise genuine issues of fact to defeat summary judgment. *Lahoti*, 586 F.3d at 1203; *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200 MMM (MCX), 2008 WL 11334030, at *9 (C.D. Cal. Mar. 17, 2008).

First, GGS, without citation to any evidence, alleges in the Opposition itself (at 9) that GGS has obtained common law trademark rights to "Vulkan" in Russia and is known as "Vulkan." But in its Certified WIPO Response, GGS did not claim to have acquired such rights or that it is known in Russia as "Vulkan." It is incongruous for GGS to simultaneously claim that Ritzio can no longer claim trademark rights to "Vulkan" in Russia because Russia banned gambling (Dkt. 56 at 10) **AND** claim that GGS gained trademark rights to "Vulkan" in Russia through its own gambling websites (Dkt. 56 at 9). In any event, GGS's conclusory and evidentiarily baseless statements that it obtained common law trademark rights to "Vulkan" in Russia and is known as "Vulkan" are not sufficient to raise a disputed issue of material fact.

Similarly, GGS's new explanation for its use of privacy services to allegedly "limit the amount of spam" GGS would receive in registering the disputed domain names is supported only by the self-serving declaration of Mr. Zakareishvili and is therefore not sufficient to raise a disputed issue of material fact. *See Lahoti*, 586 F.3d at 1203; *Milton H. Greene Archives, Inc.*, 2008 WL 11334030 at *9.

### 2. GGS confirms evidence of its bad faith

GGS confirms that it used privacy services to register the domain names (Ex. A at ¶ 12) and that it registered numerous domain names that incorporate Ritzio's VULKAN Trademarks (Dkt. 56 at 11), both of which support a finding of bad faith.[6] (*See* Dkt. 51 at 12).

While GGS never used the websites at the disputed domains to offer *bona fide* goods

---

[6] It is irrelevant whether the use of privacy services is or is not properly considered under factor VII, as the factors listed in the statute to determine bad faith are non-exclusive. 15 U.S.C. § 1125(d)(1)(B)(i). In any event, GGS ignores the legal authority cited by Ritzio indicating that the use of privacy services to register domain names indicates bad faith.

– 7 –

or services (*see* Dkt. 51 at 11), GGS further admits that the websites at the disputed domains have not been operational since 2015 (Ex. A at 6; Dkt. 56 at 11), thereby confirming that GGS does not use the Disputed Domains in connection with the *bona fide* offering of any goods or services.

### 3. The "safe-harbor" does not apply because of GGS's bad faith

"[C]ourts should make use of this 'reasonable belief' defense very sparingly and only in the most unusual cases. Otherwise, the defense would undermine the rest of the statute because all but the most blatant cybersquatters will be able to put forth at least some lawful motives for their behavior." *Lahoti*, 586 F.3d at 1203. Furthermore, this "safe harbor" is not available to domain name registrants who have acted in bad faith. *Id*. Ritzio has demonstrated GGS's bad faith as a matter of law, and GGS is a proven cybersquatter (Ex. 12 at 7) ("[GGS's] pattern of bad faith conduct has been established by virtue of the large quantity of Disputed Domain Names in these proceedings and those that have been the subject of previous UDRP decisions."). The only evidence to support GGS's "reasonable belief" defense comes from the self-serving declaration of Mr. Zakareishvili. Thus, the safe-harbor defense is not available to GGS. *See Lahoti*, 586 F.3d at 1203 ("[Lahoti] has made his cybersquatter bed and now cannot persuasively challenge the district court's conclusion that he must lie in it. A different case might be presented if Lahoti had a genuine business marketing service for which the Vericheck name was an aid, but there was no credible evidence of that here, nothing but his self-serving affidavit.")

### E. GGS's Affirmative Defenses Fail As A Matter of Law

In its Answer to Ritzio's Counterclaims (Dkt. 28), GGS failed to meet its obligation to plead its affirmative defenses with specificity—affirmative defenses it now says should defeat summary judgment:

> Counter-Defendants' actions and omissions were permitted by waiver, explicit consent, implicit consent, implied license, license, acquiescence, laches, estoppel, desire and/or the intention of Counter-Claimants.

(Dkt. 28 at ¶ 12). GGS provided nothing in the pleadings and did not develop these affirmative defenses in any way through discovery to indicate how these legal doctrines

– 8 –

apply to the facts of this case. This is not sufficient to provide Ritzio with fair notice of the nature of the defense. *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2019 WL 2475179, at *6 (S.D. Fla. June 13, 2019) ("Plaintiffs' third and fourth affirmative defenses fail for many of the same reasons because there is no indication on how these legal doctrines apply to the facts of this case. . . . [T]o allege an affirmative defense of waiver or estoppel, a party must allege and provide factual support for each of their respective elements.").

Now, for the first time, GGS raises vague and unsupported "facts" in its self-serving declaration in support of these affirmative defenses in a desperate attempt to survive summary judgment.[7]

### 1. GGS cannot succeed on its consent or waiver defenses

The sole basis for GGS's consent and waiver defenses are **1)** a conclusory statement by Mr. Zakareishvili in his self-serving declaration that GGS "operated the websites . . . with the implicit and explicit consent of Ritzio Purchase Limited" (Ex. A at ¶ 6); **2)** the vague, unsupported statements that GGS and Ritzio "had discussions" regarding GGS websites that use the Vulkan name and a potential joint project with GGS (*Id*. at ¶ 8); and **3)** the unsupported, conclusory hearsay statements that Ritzio knew of GGS's use of the domain names for years and that Ritzio knew that others were also using Ritzio's VULKAN trademarks without a license (*Id*. at ¶ 8–11). As a threshold matter, these unsupported, self-serving statements should not be considered by the Court and cannot form the basis of factual dispute to defeat summary judgment. *See Lahoti*, 586 F.3d at 1203; *Milton H. Greene Archives, Inc.*, 2008 WL 11334030 at *9.

In any event, even taken as true, that GGS and Ritzio "had discussions" is not evidence of consent. *Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 907 (D. Ariz. 2019) ("Some courts have called the implied consent doctrine 'narrow' and required a defendant to 'prove there was a meeting of the minds.'") (quoting *Ulloa v. Universal*

---

[7] GGS only addresses the defenses of consent, waiver, and laches in its Opposition, but its other affirmative defenses fail for the same reasons addressed below.

– 9 –

*Music & Video Distrib. Corp.*, 303 F. Supp. 2d 409, 416 (S.D.N.Y. 2004). The unsupported hearsay statements that Ritzio did not take action earlier against GGS, and that Ritzio did nothing to prevent others from using Ritzio's VULKAN trademarks in their domains without a license, may not serve as evidence of Ritzio's implied waiver.[8] Further, counsel for GGS knows that Ritzio **did** enforce its VULKAN trademarks against GGS as early as 2015, as Boston Law Group, PC represented GGS in a **very similar** 2015 dispute in which WIPO ordered the transfer of GGS's domains "bestvulkan.net," "moivulcan.com," "vulkandelux.com," "vulkandeluxe.com," and "vulkanplay.com." to Ritzio.[9]

GGS cannot succeed on its affirmative defenses of consent and waiver with no evidence to support these defenses and after insufficiently pleading this defense, failing to provide factual support at any point in this litigation for this defense prior to the Opposition, and introducing conclusory and vague "facts" in a self-serving declaration in order to defeat summary judgment.[10]

### 2. GGS cannot succeed on its laches defense

Without a shred of evidence, GGS asserts that GGS "continued to expend efforts into the operation and growth of their websites." (Dkt. 56 at 12). And even if GGS could prove unreasonable delay by Ritzio in taking action against GGS for cybersquatting (and

---

[8] *See Interscope Records v. Time Warner, Inc.*, No. CV101662SVWPJWX, 2010 WL 11505708, at *13 (C.D. Cal. June 28, 2010) ("Plaintiffs are correct that a copyright owner's failure to act on an infringement generally is insufficient to establish waiver or abandonment. Further, abandonment of rights in a certain copyrighted work does not, without more, act as a blanket wavier or abandonment of rights to others. Although waiver or abandonment need not be express, implied waivers are not favored in the law and require, clear, decisive and unequivocal conduct indicating an intent to waive the legal right involved.") (internal citations and quotation marks omitted).

[9] The decision is available at: https://www.wipo.int/amc/en/domains/decisions/text/2015/d2015-1106.html.

[10] *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ("A moving party without the ultimate burden of persuasion at trial … has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. … In order to carry its burden of production, the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.").

it cannot), there is no evidence that GGS suffered prejudice resulting from Ritzio's delay. *See Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 991 (9th Cir.2009) (party must establish prejudice for laches to apply). To the contrary, GGS admits that its websites at the Disputed Domains have not been operational since 2015. (Ex. A at 6; Dkt. 56 at 11). Thus, this affirmative defense fails as a matter of law.[11]

### DAMAGES AND ATTORNEY'S FEES

GGS does not respond to Ritzio's claim that this case is exceptional and that Ritzio is entitled to attorney's fees and costs pursuant 15 U.S.C. § 1117. As such, GGS has conceded the exceptional nature of this case.[12]

### CONCLUSION

For the reasons set forth above and in Ritzio's opening papers, Ritzio respectfully requests that this Court grant Ritzio's Motion for Summary Judgment.

---

[11] *See AirFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2012 WL 1067935, at *3–4 (D. Ariz. Mar. 29, 2012) (no prejudice where domain name registrant did not develop the websites but merely "parked" the domain name at a splash page); *Web-adviso v. Trump*, 927 F. Supp. 2d 32, 49 (E.D.N.Y. 2013), *aff'd sub nom. Yung v. Trump*, 648 F. App'x 24 (2d Cir. 2016) ("Plaintiff also fails to make any showing that he has built traffic to the websites or has expended meaningful resources on developing the websites . . . Thus, there is no factual basis for Plaintiff's assertion that he has been prejudiced by the three-year delay between his registration of the Domain Names and the October 2010 letter from Defendant's attorney.")

[12] *Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524–25 (6th Cir. 2006) ("The District Court also properly found that Mr. Clark's Motion Contra in response to the Appellees' Motion for Summary Judgment did not properly respond to the arguments asserted against his ADEA and ADA claims by the Appellees. The District Court properly granted summary judgment because the Appellant failed to meet his Rule 56 burden. In this ruling, the District Court did not err when it found that the Appellant abandoned his ADEA and ADA claims."); *Tyger v. Precision Drilling Corp.*, 308 F. Supp. 3d 831, 850 (M.D. Pa. 2018) ("[I]n their brief in opposition, Plaintiffs failed to oppose the issuance of summary judgment on this ground. Plaintiffs can therefore be deemed to have abandoned any argument in favor of a willful violation by Defendants, and thus any request for a three year statute of limitations.")

Respectfully submitted, November 12, 2019.

*s/Douglas A. Grady*

DOUGLAS A. GRADY (*pro hac vice*)
dgrady@bakerlaw.com
BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, Washington 98104
Telephone: 206-566-7120
Facsimile: 206-624-7317

CLAIR C. PENA
State Bar No. 032756
cpena@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: 216-621-0200
Facsimile: 216-696-0740

Attorneys for Defendants Ritzio Purchase Ltd., Dareos Inc., and Dareos Ltd.

**CERTIFICATE OF SERVICE**

Pursuant to LRCiv 5.5, I certify that the foregoing was electronically filed with this Court's ECF system, which electronic filing will automatically cause a "Notice of Electronic Filing", generated and transmitted by the ECF system, to be sent to all attorneys of record.

*s/ Andre Gougisha*
Legal Assistant